DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Kurt D. Vandyke, appeals his convictions out of the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On August 31, 2004, appellant was indicted on one count of vandalism in violation of R.C. 2909.05(B)(1)(b)/2909.05(B)(2), a felony of the fifth degree; one count of assault on a police officer in violation of R.C. 2903.13(A), a felony of the fourth degree; one count of resisting arrest in violation of R.C. 2921.33(A), a misdemeanor of the second degree; and one count of *Page 2 
obstructing official business in violation of R.C. 2921.31(A), a felony of the fifth degree. Appellant entered a plea of not guilty to all counts.
 {¶ 3} On September 24, 2004, the trial court issued a journal entry, ordering that all pretrial motions shall be filed on or before November 29, 2004. On March 31, 2005, appellant filed a motion to suppress, or in the alternative, a motion to dismiss the indictment. Appellant argued that the police did not have a warrant or probable cause to arrest him, so that "all evidence and charges which followed his unlawful arrest must be suppressed, and the counts of the indictment which form the basis for those charges must be dismissed." The State opposed appellant's motion.
 {¶ 4} On April 6, 2005, the trial court denied appellant's motion for three independent reasons, to wit: 1) that the pretrial motion was untimely pursuant to Crim.R. 12(D), 2) that the motion was untimely pursuant to the directives in the court's September 24, 2004 journal entry, and 3) that appellant failed to allege the only legal basis for resisting an illegal arrest so that appellant had failed to state with particularity the factual basis for the motion.
 {¶ 5} The matter proceeded to jury trial beginning on April 12, 2005. After the jury was empanelled, but before the presentation of any evidence, it was discovered that one juror and the alternate juror ate lunch at the same table as one of the State's witnesses. The trial court engaged in voir dire with the jurors to determine whether the panel had been tainted. The trial court learned that the *Page 3 
witness did not know that the two other women were jurors; rather, she believed they were court employees who could direct her where to eat lunch. The two jurors asserted that they did not know that the other woman was a witness in the case. The women asserted that they did not discuss the case at all. Rather, they asserted that they discussed their pets and grandchildren. Both jurors asserted that they were not biased in any way as a result of the short discussion with the witness. As a result, the trial court denied appellant's request for a mistrial on the grounds of jury taint.
 {¶ 6} The State presented its case-in-chief, and appellant moved for judgment of acquittal pursuant to Crim.R. 29. The trial court denied the motion, and appellant presented his case-in-chief. Appellant renewed his Crim.R. 29 motion, and the court denied it. At the conclusion of trial, the jury found appellant guilty of the charges of vandalism, assault on a police officer and resisting arrest. The jury found appellant not guilty of the charge of obstructing official business. The trial court subsequently sentenced appellant accordingly.
 {¶ 7} Appellant timely appealed and moved to waive payment of the deposit. This Court denied the motion for appellant's failure to comply with Loc.R. 2(C). This Court further stated that appellant's failure to comply or show good cause for non-compliance by June 30, 2005 would result in dismissal of the appeal. Notwithstanding this Court's granting of an extension until August 1, 2005, appellant failed to comply or show cause. Accordingly, this Court *Page 4 
dismissed the appeal on August 18, 2005. On August 29, 2005, appellant filed a motion for reconsideration of the dismissal, appending complying documentation pursuant to Loc.R. 2(C). This Court reinstated the appeal on September 21, 2005. On May 30, 2006, this Court again dismissed the appeal for appellant's failure to timely file his appellate brief by April 25, 2006. Appellant filed a motion for reconsideration, asserting that he had not received notice by the clerk of the filing of the record. This Court again reinstated the appeal.
 {¶ 8} Appellant raises four assignments of error. Some assignments of error are consolidated for ease of review.
 II. ASSIGNMENT OF ERROR I "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 9} Appellant argues that the trial court erred by denying his motion for a mistrial when it was discovered that two jurors ate lunch at the same table as one of the State's witnesses. This Court disagrees.
 {¶ 10} When considering a motion for mistrial, the trial court must determine whether the substantial rights of the accused have been adversely affected. Wadsworth v. Damberger (Aug. 30, 2000), 9th Dist. No. 3024-M, citing State v. Nichols (1993), 85 Ohio App.3d 65, 69. A court may grant a mistrial *Page 5 
when a fair trial is no longer possible. State v. Franklin (1991),62 Ohio St.3d 118, 127. Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion. State v.Glover (1988), 35 Ohio St.3d 18, 20. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 11} Further, a trial court must generally hold a hearing when it learns of an improper communication with a juror. State v. Worwell, 8th Dist. No. 80871, 2002-Ohio-6637, at ¶ 7. The accused bears the burden of showing that the communication biased the juror and that the accused was further prejudiced by that bias. State v. Keith (1997),79 Ohio St.3d 514, 527.
 {¶ 12} In this case, upon learning that a juror and the alternate juror sat at the same lunch table with the State's first witness (Isabel Velazquez) prior to her testifying, the trial court conducted a voir dire of both jurors and the witness. The jurors informed the court that a woman walked into the Court Street Café behind them. The jurors did not know who the woman was, and they asked her if she would like to sit and have lunch with them. The jurors stated that the woman *Page 6 
talked about her sons, a grandson and her animals. The jurors added that the woman ate some French fries, told them that she had a "nervous stomach" and left. Both jurors asserted that there was no discussion regarding appellant's case during lunch. In addition, the jurors asserted that they did not get any feelings one way or another regarding Ms. Velazquez.
 {¶ 13} The trial court then questioned Ms. Velazquez about her impression of the lunch. Ms. Velazquez asserted that she asked an officer in the courthouse where she could get something to eat and that the officer told her "maybe she can show you[.]" Ms. Velazquez asserted that a woman agreed to show her where to eat and she followed her and another woman. She asserted that the three women discussed pets. Ms. Velazquez informed the court that she believed the women were court employees and that she did not know they were jurors. She asserted that she did not tell the women that she was a witness in a case pending before the court.
 {¶ 14} Given the fact that the three women did not discuss appellant's case during lunch, that the jurors did not know that Ms. Velazquez was a witness, that Ms. Velazquez did not know that the women were jurors in appellant's case, and that the jurors asserted that they had formed no impression one way or another regarding Ms. Velazquez, this Court finds that the trial court did not abuse its discretion by denying appellant's motion for a mistrial on the basis of improper communications between the jurors and a witness. There is no evidence that the *Page 7 
jurors were biased in any way as a result of their lunchtime discussion with Ms. Velazquez regarding family and pets. In addition, there is no evidence that appellant was prejudiced by such communications. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION[.]"
 {¶ 15} Appellant argues that trial counsel was ineffective for his failures to file a timely motion to suppress/motion to dismiss; to raise proper arguments within such motions; and to object to the jury instructions. This Court disagrees.
 {¶ 16} This Court uses a two-step process as set forth inStrickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, to determine whether a defendant's right to the effective assistance of counsel has been violated.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 17} To demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, *Page 8 
paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Strickland, 466 U.S. at 691.
 {¶ 18} This Court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The defendant must first identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. This Court must then decide whether counsel's conduct fell outside the range of professional competence. Id. There is a strong presumption that licensed attorneys in Ohio are competent. State v. Smith (1985),17 Ohio St.3d 98, 100. "[A] defendant is not deprived of effective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic." State v. Brown (1988), 38 Ohio St.3d 305,319, citing State v. Johnson (1986), 24 Ohio St.3d 87. In addition, "the end result of tactical trial decisions need not be positive in order for counsel to be considered `effective.'" State v. Awkal (1996),76 Ohio St.3d 324, 337.
 {¶ 19} The Ohio Supreme Court has recognized that a court need not analyze both prongs of the Strickland test, where the issue may be disposed upon consideration of one of the factors. State v. Bradley
(1989), 42 Ohio St.3d 136, 143. Specifically,
 "`Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no *Page 9 
reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing in one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.'" Bradley, 42 Ohio St.3d at 143, quoting Strickland, 466 U.S. at 697.
 {¶ 20} In regard to counsel's failure to timely file appellant's motion to suppress/motion to dismiss, appellant has failed to show how the results of the proceeding would have been different had counsel timely filed the motions. Accordingly, appellant has failed to show how he was prejudiced by counsel's action in this regard.
 {¶ 21} Appellant next argues that trial counsel was ineffective for his failure to raise the proper arguments within the motions. Specifically, appellant argues that counsel could have "isolated [appellant from criminal liability" had he alleged excessive or unnecessary force by the police as a defense to the resisting arrest charge in lieu of his argument that the police had no legal basis to arrest appellant. However, appellant's testimony was that he did not resist the arrest. Rather, appellant testified that the officers pushed their way into the entryway of his apartment building and began hitting him repeatedly with a metallic object. Appellant testified that the officers turned him over and handcuffed him and *Page 10 
continued hitting him. He testified that the officers then threw him into the back seat of a police car. According to appellant's testimony, he did not resist the officers' attempt to arrest him in any way.
 {¶ 22} This Court agrees that it is nonsensical to have expected trial counsel to argue that appellant was privileged to use force to resist his arrest, when he would have known that appellant would claim that he did not resist the arrest. Under the circumstances, where trial counsel pursued the only theory of the case which corresponded to his client's expected testimony, counsel's failure to raise other arguments in the motions constituted trial tactics and, therefore, not deficient performance on his part. Accordingly, appellant has failed to meet the first prong of the Strickland test.
 {¶ 23} Finally, appellant argues that trial counsel's performance was deficient because he failed to object to the trial court's proposed jury instructions or submit alternate instructions.
 {¶ 24} Before he instructed the jury, the trial court judge asked counsel if they had any comments regarding the jury instructions. Appellant's trial counsel requested only that the court instruct regarding the lesser included offense of criminal damaging in lieu of or in addition to the instruction regarding vandalism. "[T]rial counsel's failure to object to the [jury] instruction renders any error waived, unless plain error is found." State v. Cook (1992), 65 Ohio St.3d 516, *Page 11 
527. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).
 {¶ 25} Here, appellant argues that trial counsel should have submitted proposed instructions regarding accident and objected to the instruction that did not address any potential defense by appellant. Although appellant does not identify any specific jury instruction he believes to be erroneous, he appears to argue error within the context of the charge of resisting arrest, as he discusses only trial counsel's strategy to challenge the legitimacy of appellant's arrest. Where appellant has not cited to the record and has only alleged error with vague reference to the instructions, it is not this Court's duty to flesh out an argument where one may exist. App.R. 12(A)(2). Accordingly, appellant has failed to show either deficiency in counsel's performance or prejudice in regard to counsel's actions regarding jury instructions. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN VIOLATION OF [CRIM.R. 29] ARTICLE 1
SECTION 10 OF THE OHIO CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE CONSTITUTION OF THE UNITED STATES WHEN IT DENIED APPELLANTS [sic] MOTION FOR ACQUITTAL." *Page 12 
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ENTERED JUDGMENT OF CONVICTION, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 26} Appellant argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. This Court disagrees.
 {¶ 27} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus. *Page 13 
 {¶ 28} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 29} A new trial should be granted, however, only in the exceptional case, where the evidence weighs heavily against the conviction. Id.
 {¶ 30} This Court has stated that "[sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 31} Appellant was charged with one count of vandalism in violation of R.C. 2909.05(B), which states:
 "(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when * * *
 "(b) Regardless of the value of the property or the amount of damage done, the property or its equivalent is necessary in order for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation. *Page 14 
 "(2) No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity. A governmental entity includes, but is not limited to, the state or a political subdivision of the state, a school district, the board of trustees of a public library or public university, or any other body corporate and politic responsible for governmental activities only in geographical areas smaller than that of the state."
 {¶ 32} R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 33} R.C. 2901.01(A)(4) defines "physical harm to property" as "any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." Such harm "does not include wear and tear occasioned by normal use." Id.
 {¶ 34} Appellant was also charged with assault on a police officer in violation of R.C. 2903.13(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 35} Appellant was further charged with resisting arrest in violation of R.C. 2921.33(A), which states that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Pursuant to R.C. 2901.22(C): *Page 15 
 "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 36} At trial, Isabel Velazquez testified that she is appellant's next-door neighbor. She testified that she called the police on May 29, 2004, when she saw appellant on her property. She testified that Officer Novosielski came to her home that day and she discussed the matter with him.
 {¶ 37} Officer Joe Novosielski of the Lorain Police Department ("LPD") testified that he received a trespassing complaint from Ms. Velazquez on May 29, 2004, and that he and another officer, Officer Hargreaves, went to appellant's home to discuss the matter. The officer testified that appellant lives in an upstairs apartment at 1126 West 21st Street in Lorain. Officer Novosielski continued to testify to the following. He knocked on the building door, and appellant came downstairs to the entrance door. The officer shined his flashlight into the dark hallway. He attempted to speak with appellant, but appellant was uncooperative, belligerent and confrontational, using profanities. Officer Novosielski testified that he believed appellant was obstructing his duties by delaying and hindering his investigation regarding the trespassing complaint. *Page 16 
 {¶ 38} Officer Novosielski testified that appellant opened the entrance door and became more belligerent, cursing at the officers. At that point, because he had not completed his investigation, the officer decided to place appellant under arrest and told him to turn around and place his hands behind his back. Appellant said, "F*** you" and turned to reenter the doorway. Officer Novosielski testified that he tried to grab appellant's left arm, and that appellant turned on him, stumbled and fell and began hitting the officer several times in the chest. He testified that he fought back, hitting appellant in the head and neck area with his flashlight in his hand.
 {¶ 39} Officer Novosielski testified that he and the other officer were finally able to secure appellant in handcuffs. They escorted appellant to a patrol car as appellant continued to spew profanities and act in a belligerent manner. Appellant resisted being placed in the patrol car. Another officer then transported appellant to a hospital, because he had sustained an inch and a half laceration on his forehead.
 {¶ 40} Officer Novosielski testified that three officers, including himself, were present during the confrontation with appellant in the entryway of his apartment building and that a fourth officer arrived on the scene after appellant was placed in custody.
 {¶ 41} Officer Robert Hargreaves of the LPD testified that he was the backup officer for Officer Novosielski in regards to the dispatch call to investigate *Page 17 
the trespassing complaint involving appellant. He testified that both he and Officer Novosielski identified themselves as police officers to appellant. The officer testified that he observed the conversation between Officer Novosielski and appellant. He asserted that appellant was not cooperative. Officer Hargreaves testified that appellant tried to reenter his residence and slam the door when Officer Novosielski told him he was under arrest. He testified that Officer Novosielski then grabbed appellant and he could see "a scuffling back and forth."
 {¶ 42} Officer Mark Pultrone of the LPD testified that he responded to a call to appellant's apartment on May 29, 2004, and that Officers Novosielski and Hargreaves were there when he arrived. He heard Officer Novosielski inform appellant that he was under arrest, and he saw appellant then try to reenter his residence. The officer testified that Officer Novosielski grabbed appellant, and appellant began throwing punches, striking Officer Novosielski. He testified that he and Officer Novosielski then struck appellant in response.
 {¶ 43} Officer Pultrone testified that he then transported appellant to a hospital. He testified that, en route, appellant "became more and more aggravated, screaming and yelling." The officer testified that appellant then began kicking the back window of the patrol car, and the window shattered. Officer Pultrone testified that he pulled over, and Officer Kovach, who was following in another patrol car, pulled behind him. He testified that he opened the rear door of his car, and appellant began kicking at him and Officer Kovach. He asserted that the *Page 18 
officers were unable to restrain appellant with leg restraints due to appellant's continued kicking. Officer Kovach then sprayed appellant with pepper spray.
 {¶ 44} Officer Pultrone testified that he then continued transporting appellant to a hospital approximately one-half mile away from where they had pulled off the road. He testified that, after delivering appellant to medical personnel, he took his police car to the city garage and put it out of service due to the broken window. Officer Pultrone testified that a car with a broken window is inoperable as a police vehicle because it is unsafe, would allow detainees to escape, and would allow passengers accessibility to police weapons and equipment.
 {¶ 45} Officer Pultrone testified that he has been trained in the use of pepper spray, which training included being sprayed himself. He testified that one's eyes burn and swell when sprayed with pepper spray. Officer Pultrone reviewed pictures of appellant taken on the evening that he transported appellant to the hospital. He testified that the pictures indicated that appellant's eyes were red and swollen shut, as would be expected of someone who had been sprayed with pepper spray.
 {¶ 46} Officer John Kovach of the LPD testified that he responded to Officer Novosielski's call for assistance at appellant's apartment on May 29, 2004. He testified that, when he arrived, appellant was being led out in handcuffs to a patrol car. He testified that he followed Officer Pultrone's cruiser to the hospital. *Page 19 
The officer testified that, on the way to the hospital, he saw the rear passenger window in Officer Pultrone's car shatter. He then pulled over behind Officer Pultrone's car.
 {¶ 47} Officer Kovach testified that he saw appellant continue to kick in the back of the car as he approached. He testified that he and Officer Pultrone tried to use a leg restraint device on appellant but they were unable to do so. He asserted that appellant kicked him, and he gave appellant a two to three-second burst of pepper spray in the face. Officer Kovach testified that Officer Pultrone then continued driving appellant to the hospital. He testified that the officers did not move appellant to another vehicle because the hospital was close and it would have been dangerous to remove appellant from the vehicle as it was parked on a state route with 45 m.p.h. traffic driving by their cars. The officers did not want appellant, whose eyes were swollen shut, to dart out of the car into traffic.
 {¶ 48} Ward Burnette testified on appellant's behalf. He testified that he went to appellant's apartment building on May 30, 2004, to repair an outside door that would not latch. He testified that he pulled off tape from the door where a deadbolt should have been, and he installed a deadbolt to make the door secure. He asserted that the door was still on the frame and on its hinges when he arrived to fix it.
 {¶ 49} Mr. Burnette testified that he looked into the stairwell and saw blood on the wall. *Page 20 
 {¶ 50} Christopher VanDyke, appellant's son, testified that he was at his father's apartment on May 29, 2004, when the police arrived at approximately 8:45 p.m. He testified that the people at the door identified themselves as the police, but that they were shining flashlights into the entryway, so that they could not see who was at the door. Christopher testified that he did not accompany appellant downstairs to the entryway. He testified that he heard a thud or a loud bang, which sounded like the door hitting against the slag rock wall. Christopher testified that he left appellant's apartment and peeked around the corner to look down into the entryway. He testified that he saw a police officer standing over appellant with a flashlight in the officer's raised hand. He testified that the light from three streetlights allowed him to see the police beating appellant with flashlights in the dark hallway. Christopher later testified that, while he did not actually see the police hit his father, he saw an officer's arm rising. He testified that he assumed the arm would also come down. Christopher testified that he then returned to appellant's living room and did not make his presence known to the police that evening or any time later.
 {¶ 51} Christopher testified that it was too dark to notice blood stains on the stairwell wall, but that he saw them the next day. He testified that he also noticed the next day that the entrance door would not latch properly and that it was "all bent up." *Page 21 
 {¶ 52} Appellant testified on his own behalf. He testified that the police knocked on his building door around 8:30 or 9:00 p.m. on May 29, 2004. He testified that the police identified themselves, that he did not doubt their identification, but that there was no way to positively know who was at the door in the dark. Appellant admitted that he had a prior conviction for assault on a police officer. Because of that experience, he testified that he was afraid to open the door and have any interaction with the police that night.
 {¶ 53} Appellant asserted that he spoke with the police about Ms. Velazquez' complaint through the partially open door, but he refused to leave the building. Appellant testified that he responded to some questions by telling the police that they already had some of the requested information on their computer. He admitted that the officer was trying to clarify appellant's address, because his last known address was in Sheffield Lake; but appellant testified that he believed he had clarified the matter with the officer.
 {¶ 54} Appellant testified that he told the officers that he did not want to answer any more questions, and he reached down to make sure the door was locked. He testified that he thought Officer Novosielski misinterpreted his actions and the door burst open. Appellant testified that he fell back and "saw stars." He asserted that he was being struck repeatedly on the forehead, nose and face by something metallic. Appellant testified that he never threw any punches nor attempted to strike any officer. *Page 22 
 {¶ 55} Appellant testified that the officers turned him over and handcuffed him and hit him several more times on the back of his head. He testified that the police pulled him upright by the hand cuffs, swung him around and "bashed" his head into the wall. He testified that the officers dragged him outside, told him to stop crying, and sprayed him in each eye with pepper spray. He testified that they then shoved him into a police car. Appellant testified that there was blood running down his face, that his eyes were swollen shut, and that he could not see anything. He testified that his body slid off the seat so that he was wedged between the driver's seat and the safety divider. He asserted that the weight of his body caused the hand cuffs to tighten. Appellant testified that he could not breathe, and he panicked and began kicking the lower part of the car door to get the officer's attention.
 {¶ 56} Appellant testified that the car stopped and the officers accused him of destruction of property. He later admitted that the cruiser window broke as a result of his foot hitting the bottom part of the door. Appellant testified that an officer again sprayed him in the face with pepper spray.
 {¶ 57} Although there was some conflicting evidence in this case, this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. State v. Crowe, 9th Dist. No. 04CA0098-M,2005-Ohio-4082, at ¶ 22. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the *Page 23 
evidence challenge only because the jury chose to believe certain witness' testimony over the testimony of others. Id.
 {¶ 58} This Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of appellant. A thorough review of the record compels this Court to find no indication that the trier of fact lost its way and committed a manifest miscarriage of justice in convicting appellant of vandalism, assault on a police officer and resisting arrest.
 {¶ 59} The weight of the evidence supports the conclusion that appellant reasonably knew that repeatedly kicking the door of the police cruiser would cause damage to the vehicle. In this case, there is no dispute that the cruiser window shattered. Furthermore, Officer Pultrone testified that the broken window required that the cruiser be placed out of service due to safety concerns, to prevent escapes and to prevent access by passengers to police equipment and weapons.
 {¶ 60} The weight of the evidence further supports the conclusion that appellant repeatedly hit Officer Novosielski in the chest, as the officers attempted to restrain appellant. Although Officer Novosielski did not seek medical attention, appellant's repeated punches constituted an attempt to cause physical harm to the officer.
 {¶ 61} Finally, the weight of the evidence supports the conclusion that appellant forcibly resisted the officers' attempt to place him under arrest. Appellant physically resisted the officers' attempt by pulling away, flailing and *Page 24 
punching Officer Novosielski as he attempted to place appellant in hand cuffs after informing appellant that he was under arrest.
 {¶ 62} Accordingly, this Court finds that appellant's convictions were not against the manifest weight of the evidence. Further, having found that appellant's convictions were supported by the weight of the evidence, we necessarily find that there was sufficient evidence to support appellant's convictions, so that the trial court did not err when it denied appellant's Crim.R. 29 motion for judgment of acquittal. Appellant's third and fourth assignments of error are overruled.
 III. {¶ 63} Appellant's assignments of error are overruled. Appellant's convictions out of the Lorain County Court of Common Pleas are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of *Page 25 
Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, P. J. MOORE, J. CONCUR *Page 1