[Cite as *State v. Cramer*, 2012-Ohio-2477.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
)ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                 C.A. No.     26064

    Appellee

    v.                      APPEAL FROM JUDGMENT
ENTERED IN THE
JOEY K. CRAMER              COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
    Appellant              CASE No.    CR 11 02 0314

DECISION AND JOURNAL ENTRY

Dated: June 6, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Police responded to a report that there had been an armed robbery at the Sound Charger Music Store. When an officer went next door to a sports bar to see if the bar's security camera had captured anything, she noticed that one of the patrons, Joey Cramer, appeared to match the description of the robber. She went back to the music store to confirm the robber's description and then returned to the sports bar, but Mr. Cramer had left. Shortly thereafter, another officer spotted him across the street near a gas station. After they detained him, the music store clerk identified him as the robber. The Grand Jury indicted Mr. Cramer for aggravated robbery, robbery, and having weapons while under disability. A jury found him guilty of the offenses. The trial court merged the robbery count with the aggravated robbery count and sentenced him to nine years in prison. Mr. Cramer has appealed, arguing that the court incorrectly denied his motion for judgment of acquittal, that his convictions are against the

manifest weight of the evidence, and that the trial court incorrectly denied his motions for mistrial. We affirm because there was sufficient evidence to convict him of the offenses, his convictions are not against the manifest weight of the evidence, and the trial court correctly denied his motions for mistrial.

FACTS

{¶2}    Joshua Austin testified that he was working at the music store on the afternoon of February 1, 2011, when a man entered through the back entrance. He was the first customer of the day. The man greeted him, then picked out a compact disc and brought it to the register to purchase. The man handed him a twenty-dollar bill so he looked down at the register to make change. When he looked back up, the man pointed a gun at him and demanded all of the money in the cash register. According to Mr. Austin, he had previously worked at a couple of large retail stores and had been trained on what to do in the event of a robbery. He had learned to just calmly hand over the money while paying close attention to details about the person's features. He said that the man who robbed the store "was short in stature, had very dark hair, had stubble around the area of his chin, kind of came to a point but rounded and had ears that were kind of oddly attached and a little bit oversized." "He was wearing a dark blue or black hoodie. He had jeans on, work boots and had a Carhartt jacket." After the man left the store through the front door, Mr. Austin called 911.

{¶3}    Officer Brian Armstead testified that he was one of the first officers to arrive at the store. He said that, after he learned that the suspect was wearing work boots, he went outside to look for footprints in the snow in front of the store. He found a couple of sets that were a possible match to work boots and traced one of them to a construction worker who was working

at a nearby business. He followed another set along the sidewalk and down a side street but lost them in front of a house with a driveway that had been cleared of snow.

{¶4} Sergeant Kris Beitzel testified that, after she got to the scene, she decided to see if any of the businesses near the music store had a security camera that had captured the robber going to or coming from the store. She went next door to a sports bar, told the bartender what had happened, and asked if the bar had a security camera. The bartender took her to a small room that contained the video equipment, but they were unable to retrieve any footage. While they were in the room, the bartender drew her attention to Mr. Cramer, who was sitting at the bar by himself and wearing a dark-hooded sweatshirt. When she exited the room, she took note of Mr. Cramer's features and returned to the music store. She asked Mr. Austin if he could identify the robber, and, when he said that he could, told him that she thought there was someone at the bar who matched the description he had given.

{¶5} Officers returned to the sports bar, but Mr. Cramer was gone. They went outside to look for him and eventually spotted him across the street near a gas station. They ran across the street and detained him, then showed him to Mr. Austin, who identified him as the man who had robbed the store. Officer Armstead placed him in the back of his police car, administered *Miranda* warnings, and asked him about the robbery. Mr. Cramer answered that he had nothing to do with it and that he had never even been in the music store. He said that he was staying with a friend who lived nearby and had walked to the sports bar to buy a beer. When he learned that the bar charged $2.50, he decided to go across the street to the gas station where he could buy one for $2.00.

{¶6} Officer Armstead testified that the house where he lost the set of footprints was the same house where Mr. Cramer said he was staying. After Officer Armstead finished

speaking to Mr. Cramer, officers went to the address and got permission from the owner to search the house. Inside, they found a tan Carhartt jacket that matched the description that had been provided by Mr. Austin. The owner of the jacket testified that he had sometimes allowed Mr. Cramer to use it.

{¶7} After his arrest, Mr. Cramer agreed to take a polygraph test with stipulated questions. The three relevant questions were whether he stole the money from the music store, whether he pointed a gun at a music store employee, and whether he was the person who committed the robbery. Although Mr. Cramer denied each allegation, the test indicated that his answers were deceptive.

## SUFFICIENCY

{¶8} Mr. Cramer's first assignment of error is that the trial court incorrectly denied his motion for judgment of acquittal. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Cramer's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶9} Mr. Cramer has argued that there was insufficient evidence to support his convictions for aggravated robbery and having a weapon while under disability. Under Section 2911.01(A)(1) of the Ohio Revised Code, "[n]o person, in attempting or committing a theft offense . . . shall . . . [h]ave a deadly weapon on or about the offender's person or under the

offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it . . . ." Under Section 2923.13(A)(2), "no person shall knowingly acquire, have, carry, or use any firearm . . . if . . . [t]he person . . . has been convicted of any felony offense of violence . . . ."

{¶10} The thrust of Mr. Cramer's argument is that the State failed to prove that he was the man who held up the music store. Mr. Austin, however, identified Mr. Cramer as the person who pointed a gun at him and told him to give him all of the money in the music store cash register. In addition, at the time police arrested Mr. Cramer, he was wearing clothes that were similar to the clothes worn by the robber, absent the Carhartt jacket. There were footprints, however, leading from the front of the store to the driveway of the house where Mr. Cramer said he had been staying and, inside that house, police recovered a Carhartt jacket. Furthermore, there was enough time between when Mr. Austin called 911 and when Sergeant Beitzel entered the sports bar for Mr. Cramer to have walked to his friend's house, removed the jacket, and walked back to the sports bar.

{¶11} Regarding his conviction for having a weapon under disability, the State presented evidence that Mr. Cramer had previously been convicted of aggravated assault, which is an offense of violence under Section 2923.13. R.C. 2901.01(A)(9)(a) (including a conviction for aggravated assault under Section 2903.12 in the definition of offense of violence). While Mr. Cramer has noted that the State failed to find a gun, Mr. Austin's testimony that Mr. Cramer pointed a gun at him was enough to support his conviction.

{¶12} Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence to support Mr. Cramer's convictions for aggravated robbery and having a weapon while under disability. Mr. Cramer's first assignment of error is overruled.

## MANIFEST WEIGHT

{¶13} Mr. Cramer's second assignment of error is that his convictions are against the manifest weight of the evidence. If a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶14} Mr. Cramer has argued that, even if there was sufficient evidence that he robbed the music store, the jury lost its way when it found him guilty of the offenses. He has argued that, not only was Mr. Austin's identification of him on the day of the robbery inherently unreliable, it was over 30 minutes between when the robbery took place and when officers asked Mr. Austin whether he was the one who committed the crime. He has also argued that the officers did not recover any fingerprints from the two compact disc cases that the robber brought to the counter and failed to investigate another individual who was wearing a Carhartt-style jacket in the vicinity of the music store shortly after they arrived.

{¶15} On the day of the robbery, Mr. Austin told police that he was 100% positive that Mr. Cramer was the person who robbed the music store. He testified that he had received training on what to pay attention to during a robbery and noted a couple of distinguishing features about Mr. Cramer's appearance. Mr. Austin's observations about Mr. Cramer's distinguishing features are consistent with the photograph of Mr. Cramer submitted into evidence. In addition, Mr. Cramer, expressing disbelief to Officer Armstead that Mr. Austin

would have identified him as the robber, admitted that his ears made him unique and allowed that he was the only person in the area who looked like him.

{¶16} Regarding the compact-disc cases that the robber left at the counter after Mr. Austin gave him the money from the cash register, we note that officers testified that they examined the cases, but were unable to recover any fingerprints. Accordingly, the cases do not exculpate Mr. Cramer. Finally, regarding the other person who was allegedly wearing a Carhartt jacket in the vicinity of the store, we note that the dash camera in Officer Armstead's police car captured someone crossing the street near the music store. While the person appears to have been wearing a dark brown or black jacket, it is not possible to tell whether it is a Carhartt jacket. Furthermore, it appears from the video that, at the time the person crossed the street, all of the officers were inside the music store. There is no evidence that any of the officers saw the individual before he walked out of view.

{¶17} We have reviewed the evidence and conclude that the jury did not lose its way when it convicted Mr. Cramer of aggravated robbery and having a weapon while under disability. Mr. Cramer's second assignment of error is overruled.

MISTRIAL

{¶18} Mr. Cramer's third assignment of error is that the trial court incorrectly denied his motions for mistrial. "When considering a motion for mistrial, the trial court must determine whether the substantial rights of the accused have been adversely affected." *State v. Vandyke*, 9th Dist. No. 05CA008723, 2007-Ohio-1356, at ¶ 10. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St. 3d 118, 127 (1991).

{¶19} Mr. Cramer has argued that the trial court should have declared a mistrial after the prosecutor told the jury during opening statements that he failed a polygraph examination. Mr. Cramer, however, has not provided this Court with a transcript of the opening statements. Accordingly, we are unable to determine whether what the prosecutor said to the jurors adversely affected his substantial rights. *See Metro Parks, Summit County v. Kinnett*, 9th Dist. No. 24875, 2010-Ohio-881, at ¶ 7 *(*noting that it is the appellant's duty "to arrange for the timely transmission of the record, including any transcripts of proceedings, App. R. 9(C) statement, or App. R. 9(D) statement, as may be appropriate . . . .") (quoting Loc. R. 5(A)).

{¶20} Mr. Cramer has also argued that the court should have declared a mistrial after it was revealed that police examined the compact disc cases for fingerprints. According to Mr. Cramer, the State failed to disclose before trial that it had tested any cases for fingerprints. It also returned the cases to the store before he could examine them. Officers testified that they did not take the cases from the store or prepare a report about them because they did not have any fingerprints on them. We agree with the Sixth District Court of Appeals that an "investigator['s] failure to find any fingerprints at the scene of the crime does not in any way lead to a conclusion that [a defendant] could not be responsible for the crimes that were committed." *State v. Roughton*, 132 Ohio App. 3d 268, 281 (6th Dist. 1999). "Therefore, because the information was not potentially exculpatory, the state did not have an obligation to disclose it . . . ." *Id.*

{¶21} Mr. Cramer has further argued that the court should have declared a mistrial because the State showed the jury the entire video recorded by Officer Armstead's dash camera. The State had initially intended to play only certain parts of the video, but Mr. Cramer's lawyer objected, arguing that showing the video in pieces would be "extremely prejudicial" to Mr. Cramer. The court, therefore, ordered the State to play the entire video. Mr. Cramer's lawyer

objected to that as well, arguing that there might be things on the video that were prejudicial to Mr. Cramer. The court overruled his objection and motion for mistrial, however, because he had not moved to suppress any parts of the video before trial.

{¶22} The video begins 45 seconds before Officer Armstead activated his emergency lights upon learning of the robbery. It shows him driving across town while responding to the 911 call and remains on after he parked his car along the street in front of the music store. It continues to run while officers investigated the robbery and detained Mr. Cramer. Finally, it records the conversation Officer Armstead had with Mr. Cramer after he placed Mr. Cramer in the back of the car.

{¶23} Mr. Cramer has argued that the part of the video showing Officer Armstead's high-speed response to the 911 call was irrelevant and sensationalistic. The only part of the video to which Mr. Cramer objected at trial, however, was the part of his interview with Officer Armstead in which he told the officer about his criminal record. *See State v. Saravia*, 9th Dist. No. 25977, 2012-Ohio-1443, ¶ 17 ("This Court will not consider arguments made by an appellant for the first time on appeal."). Moreover, we have reviewed the video and do not believe that the part showing Officer's Armstead's drive to the music store prejudiced Mr. Cramer. If anything, the video may have sullied the jury's opinion of Officer Armstead, who cursed out a female driver who failed to pull to the side of the road in front of him.

{¶24} The trial court correctly denied Mr. Cramer's motions for mistrial. Mr. Cramer's third assignment of error is overruled.

CONCLUSION

**{¶25}** Mr. Cramer's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The trial court correctly denied his motions for mistrial. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

CARR, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶26} I concur in the judgment. With respect to Mr. Cramer's third assignment of error, I agree that he was not deprived of a fair trial when the officer testified that he did not find any fingerprints on the disc.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.