[Cite as *State v. Vu*, 2012-Ohio-2002.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     11CA0058-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LAI T. VU | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.     06-CR-0373 |

DECISION AND JOURNAL ENTRY

Dated: May 7, 2012

BELFANCE, Judge.

{¶1}    Defendant-Appellant Lai T. Vu appeals from the judgments of the Medina County Court of Common Pleas.  For the reasons set forth below, we affirm.

I.

{¶2}    "This Court previously recounted the facts underlying this matter in several related appeals."  *State v. Vu,* 9th Dist. No. 11CA0042-M, 2012-Ohio-746, ¶ 2, citing *State v. Hoang*, 9th Dist. No. 09CA0061–M, 2010–Ohio–6054; *State v. Ha*, 9th Dist. No. 07CA0089–M, 2009–Ohio–1134.

> In essence, agents from the Medway Drug Enforcement Agency ("Medway") apprehended [Mr.] Vu in connection with a drug ring after simultaneously executing search warrants at four apartments and four houses.  [Mr. Vu and his wife, Lan] Vu (collectively "the Vus"), were living at Stoneybrook Apt. 104 when Medway agents searched all of the residences on June 15, 2006.  Medway confiscated over 23,000 grams of marijuana from the eight locations that its agents searched as well as numerous documents tying the members of the drug ring to one another.
>
> Despite reporting a joint income of just over $20,000 for 2004 and 2005, the Vus had numerous high-end items in their apartment as well as a substantial sum of

cash. Moreover, they owned several vehicles; made large monthly deposits, at times in excess of $10,000; and paid a monthly mortgage of $1,600 for a house on Red Clover Lane. The Red Clover Lane property, which was titled in [Mr.] Vu's name, was one of the large-scale marijuana grow houses that Medway agents uncovered when they executed their warrants.

*Vu* at ¶ 2-3.

{¶3}   On June 23, 2006, an indictment was filed against Mr. Vu for one count of possessing marijuana, in violation of R.C. 2925.11(A)(C)(3)(f).   In addition, there were four attendant forfeiture specifications. A supplemental indictment was filed August 17, 2006,  and added the following charges: count two, conspiracy to commit the crime of possessing marijuana, in violation of R.C. 2923.01(A)(1) and 2925.11(A)(C)(3)(f); count three, conspiracy to commit the crime of possessing marijuana, in violation of R.C. 2923.01(A)(2) and 2925.11(A)(C)(3)(f); count four, complicity to commit the crime of possessing marijuana, in violation of R.C. 2923.03(A)(2) and 2925.11(A)(C)(3)(f); count five, illegal cultivation of marijuana, in violation of R.C. 2925.04(A)(C)(5)(f); count six, conspiracy to commit the illegal cultivation of marijuana, in violation of R.C. 2923.01(A)(1) and 2925.04(A)(C)(5)(f); count seven, conspiracy to commit the illegal cultivation of marijuana, in violation of R.C. 2923.01(A)(2) and 2925.04(A)(C)(5)(f); and count eight, complicity to commit the illegal cultivation of marijuana, in violation of R.C. 2923.03(A)(2) and 2925.04(A)(C)(5)(f).   All additional seven charges also contained forfeiture specifications under R.C. 2925.42(A)(1).   The trial court later granted the State's request to consolidate Mr. Vu's trial with his wife's trial on the basis that the matters arose from the same circumstances and involved the same evidence.

{¶4}   The matter proceeded to a jury trial on May 7, 2007.   The jury found Mr. Vu guilty on all eight counts and determined that all of the property listed on the verdict of forfeiture

form was subject to forfeiture. The State elected to pursue a sentence only on counts four, seven, and eight. The trial court sentenced Mr. Vu to a total of thirteen years in prison.

{¶5} Mr. Vu appealed; however, this Court remanded the matter to the trial court, as the trial court's sentencing entry contained a defective post-release control notification. *State v. Vu*, 9th Dist. Nos. 07CA0094–M, 07CA0095–M, 07CA0096–M, 07CA0107–M & 07CA0108–M, 2009–Ohio–2945. Upon remand, the trial court held a resentencing hearing and issued another sentencing entry. Mr. Vu appealed, but this Court dismissed the second appeal because the trial court did not clearly and unambiguously order forfeiture in its post-remand entry. *State v. Vu*, 9th Dist. Nos. 09CA0062–M & 09CA0101–M (Mar. 9, 2011). The trial court issued its final sentencing entry on March 11, 2011.

{¶6} Mr. Vu now appeals and raises twelve assignments of error for our review. For ease of analysis, we consolidate and rearrange several of the assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT ISSUED A NUNC PRO TUNC ENTRY THAT MODIFIED THE DEFENDANT'S SENTENCE.

{¶7} Mr. Vu asserts in his first assignment of error that the trial court erred in issuing a nunc pro tunc order to correct its prior entry because the trial court modified Mr. Vu's sentence. We do not agree.

{¶8} Mr. Vu maintains that the trial court modified his sentence because, in the 2011 sentencing entry, it ordered the forfeiture of certain property. Thus, Mr. Vu argues that he was entitled to a hearing on the issue and to be present at that hearing. In this Court's prior journal entry, this Court dismissed Mr. Vu's attempted appeal because the sentencing entry appealed from did not clearly and unambiguously order forfeiture of the property in *that* entry. However,

a review of the record reveals that originally, in 2007, a hearing was held on the forfeiture specifications, the jury concluded that the property was subject to forfeiture, and the trial court ordered forfeiture. Mr. Vu has not asserted that he was not present for any of these proceedings.

{¶9} What the trial court failed to do in its prior sentencing entry was to clearly and unambiguously order the forfeiture of the property in that entry. Thus, this Court was only requiring the trial court to issue a single entry that accurately reflected what had already occurred in order to comply with the then applicable precedent, *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330. *Id.* at ¶ 19 (concluding that "the judgment of conviction is a single document[]"). The trial court was, therefore, not modifying Mr. Vu's sentence. "[N]unc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided." (Internal quotations and citations omitted.) *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 15. Accordingly, as we conclude the trial court was not modifying Mr. Vu's sentence, his argument fails. *See also State ex rel. DeWine v. Burge*, 128 Ohio St.3d 236, 2011-Ohio-235, ¶ 18.

## ASSIGNMENT OF ERROR III

> THE FORFEITURE FINDINGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED UPON INSUFFICIENT EVIDENCE AT TRIAL.

{¶10} Mr. Vu asserts in his third assignment of error that the jury's forfeiture findings were against the manifest weight of the evidence.

{¶11} The State must establish by a preponderance of the evidence that the property is subject to forfeiture. *See* former R.C. 2925.42(B)(3)(a). We will affirm the judgment of forfeiture if it is "supported by some competent, credible evidence going to all the essential elements of the case." (Internal quotations and citations omitted.) *Vu*, 2012-Ohio-746, at ¶ 46.

{¶12} At the time the jury was considering the forfeiture specifications at issue, R.C. 2925.42(A)(1)(a)-(b) provided that:

> a person who is convicted of or pleads guilty to a felony drug abuse offense * * * loses any right to the possession of property and forfeits to the state any right, title, and interest the person may have in that property if either of the following applies:
>
> (a) [t]he property constitutes, or is derived directly or indirectly from, any proceeds that the person obtained directly or indirectly from the commission of the felony drug abuse offense or act.
>
> (b) [t]he property was used or intended to be used in any manner to commit, or to facilitate the commission of, the felony drug abuse offense or act.

{¶13} The State sought forfeiture of $7,763.50 cash, a 2002 Toyota, a 1998 Dodge, the house on Red Clover, a lawn mower, a leaf blower, a gas grill, a snow blower, a laptop, 2 TVs, 58 clear stones, a ring with clear stones, a Rolex watch, a DVD/VHS player, and speakers. At the forfeiture hearing, the jury heard testimony from the case agent from Medway, Michael Polen, who was involved with this matter. He testified that the items were either seized from the Stoneybrook apartment number 104 or the house on Red Clover. There was testimony that both vehicles were titled to Mr. Vu and that the deed to Red Clover was in Mr. Vu's name. Agent Polen testified that the Vus listed their joint income for 2005 as $16,125. Despite their limited income, Agent Polen testified that the Vus spent over $10,000 on grow supplies, hundreds of dollars on money orders, and in addition, made mortgage, rent, and utility payments. He indicated that there was no evidence that the Vus went regularly to a place of employment. Ultimately, Agent Polen, based upon his experience and training, concluded that the Vus purchased these items from the proceeds of drug offenses or that the items (such as the house, the lawn mower, etc.) were used to facilitate a drug offense. Following the forfeiture hearing, the jury concluded that all of the items were subject to forfeiture.

**{¶14}** In light of the uncontradicted testimony and evidence presented at the forfeiture hearing, this Court must conclude that the State presented competent, credible evidence that all of the items at issue were subject to forfeiture. From the evidence, the jury could have reasonably inferred that, given the Vus' paltry reported income as compared to the combined values of their possessions, expenses, and purchases, all the items the State sought to be forfeited were derived from a source other than their reported income, i.e. the large-scale marijuana operation with which the Vus were associated or were used to facilitate a drug offense. *See* former R.C. 2925.42(A)(1)(a)-(b). Therefore, we overrule Mr. Vu's third assignment of error.

ASSIGNMENT OF ERROR II

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILTY AND, AS A RESULT, THE FEDERAL CONSTITUTION AND THE OHIO CONSTITUTION REQUIRE THE CONVICTION TO BE REVERSED WITH PREJUDICE TO FURTHER PROSECUTION.

**{¶15}** Mr. Vu asserts in his second assignment of error that the jury's findings of guilty are based upon insufficient evidence.

**{¶16}** In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

**{¶17}** Mr. Vu's argument is unclear and difficult to follow. It appears that Mr. Vu is not challenging the sufficiency of the evidence with respect to count one, the possession charge, for

which the jury found Mr. Vu guilty of a fifth-degree felony and concluded that Mr. Vu possessed greater than 200 grams and less than 1000 grams of marijuana. Instead, Mr. Vu asserts that "[t]he question then becomes whether the State produced sufficient evidence as to the charges which the jury found did exceed 20,000 grams." Thus, it appears that Mr. Vu is only challenging the sufficiency of the evidence with respect to counts two through eight. It seems that, in part, Mr. Vu is asserting the State's evidence forced the jury to draw unreasonable inferences, or inferences upon inferences, in order to find him guilty of the charges.

{¶18} Mr. Vu was found guilty of possession of drugs (count one), two counts of conspiracy to commit possession of drugs (counts two and three), one count of complicity to commit possession of drugs (count four), illegal cultivation of marijuana (count five), two counts of conspiracy to commit illegal cultivation of marijuana (counts six and seven), and one count of complicity to commit illegal cultivation of marijuana (count eight).

{¶19} R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." In the instant matter, there is no dispute that marijuana is the controlled substance at issue. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶20} R.C. 2925.04(A) provides that "[n]o person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." "'Cultivate' includes planting, watering, fertilizing, or tilling." R.C. 2925.01(F).

{¶21} R.C. 2923.01(A)(1)-(2), the statute discussing conspiracy, states:

No person, with purpose to commit or to promote or facilitate the commission of
* * * a felony drug trafficking, manufacturing, processing, or possession offense,

theft of drugs, or illegal processing of drug documents * * * shall do either of the following:

(1) With another person or persons, plan or aid in planning the commission of any of the specified offenses;

(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.

{¶22} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy." R.C. 2923.01(B). "[A]n overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed." R.C. 2923.01(B). "Once the actual commission of the offense at issue occurs, the crime of complicity arises." *Hoang*, 2010-Ohio-6054, at ¶ 9, citing R.C. 2923.01(G) and 2923.03(C). The complicity statute, R.C. 2923.03(A)(2), provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"

{¶23} We conclude that sufficient evidence was presented, if believed, to support the jury's guilty verdict on counts two through eight.

{¶24} Medway agents began conducting surveillance on an apartment at Grand Lake occupied by Henry Tran in April 2006. Surveillance of that apartment and surveillance of vehicles going to and from that apartment led agents to investigate other residences and vehicles. The investigation culminated in a simultaneous search of eight residences, comprised of four

apartments and four houses, on June 15, 2006. Law enforcement discovered large-scale indoor marijuana grow operations in the basement of 1480 Troon Avenue and 3384 Red Clover, and a similar operation in the beginning stages at 4784 Baywood. In total, over 20,000 grams of marijuana was recovered.

{¶25} Charles DeFelice, the director of Medway testified that:

[t]he apartments and the Autumnwood residence, we can determine that they were what we term as sleep houses, that all the subjects involved would stay in these, this is where they lived.

The grow houses, Baywood, Red Clover[,] and Troon houses that contained the indoor grows were primarily grow houses.

They were sparsely furnished.

The subjects involved would leave the apartment in the morning, disburse out to these grow houses, mow the lawn, leave vehicles in the driveway, leave the garage door open to give some sense of normalcy, not to grow suspicion, that there was some activity in these houses.

Then toward evening, they would return to the apartment, and that is where they would stay for the night.

{¶26} He further testified that investigators never tracked any of the subjects to a regular place of employment. Director DeFelice explained that no indoor marijuana cultivation was discovered at the apartments or at the house on Autumnwood; instead, searches of those residences revealed receipts for grow equipment, large amounts of cash, money transfers to Vietnam, and other documents. There was testimony that Mr. Vu owned the house on Red Clover, Hoa Kim Tran and Than To Tran owned the house on Baywood, and Khuong Vay Hoang owned the house on Troon. In addition, Mr. Vu and Mrs. Vu were associated with apartment 104 in the Stoneybrook complex, Khuong Vay Hoang, Than Thi Tran, and Phu Hoang were associated with apartment 107 in the Stoneybrook Complex, and Hoa Kim Tran and Than To Tran were associated with apartment number 106 in the Stoneybrook complex. Director

DeFelice testified that in his opinion, it would take more than one person to manage the three grow houses and that those three houses were part of the same operation. He based his conclusion, in part, on the similarities between the grow houses. He testified that all three houses contained electrical diversions to bypass the electrical meter, which was generally done to avoid detection as grow houses consume large amounts of electricity. In addition, Director DeFelice testified that the cultivation process produces both strong odors and large amounts of heat and so grow rooms need to be ventilated. Both the grow rooms in the house on Troon and the house on Red Clover had similar ventilation systems running up through the closets and out the roofs. The house on Baywood contained boxes of ductwork that was similar to the ductwork used for ventilation in the other two houses. Further, similar schedules containing lists of fertilizers and growing materials were found taped to the wall in the basement of Troon and the basement of Red Clover. Moreover, the three houses contained similar grow lights, fertilizers, and related equipment. In fact, the grow houses were so similar, that Senior Agent Charles Ellis from Medway who assisted in the investigation and search, testified that "[t]hese were very sophisticated grows[,]" and that he had "never seen any that were set up exactly the same as all these residences were." Agent Ellis stated that "[a]ll of these have the same lighting system, vent systems, they have the same electric diversion. I have never seen any two places be exactly the same, as all of these were."

{¶27} Moreover, the State presented evidence which tied individuals in the group to each other, as well as to other residences. For example, investigators observed the Toyota Corolla registered to Mr. Vu leave the Stoneybrook complex with a female driver and male passenger, both of Asian descent, and go to the house on Red Clover. The driver parked the car in the garage and both individuals went inside the house. When the Corolla arrived at Red

Clover, Mr. Vu was outside mowing the lawn. Police observed a Tacoma pickup registered to Khuong Vay Hoang (who owned 1480 Troon, the largest grow house) arrive at Red Clover. A male exited the Tacoma, went into the house, picked up two mattresses and left. Investigators observed a Toyota 4-Runner, parked in a nearby parking lot, also registered to Khuong Vay Hoang, follow the Tacoma. Investigators were unable to determine where the Tacoma ended up.

{¶28} In addition, investigators found documents belonging to one individual located at a residence owned or occupied by another individual. When investigators searched the house on Troon (owned by Khuong Vay Hoang), they found a receipt for a four-wheeler sold to Henry Tran. The four-wheeler was found at the house on Autumnwood, which was leased to Henry Tran. In Henry Tran's Autumnwood residence, investigators found, inter alia, a United States passport issued to Hoa Kim Tran, who owned the house on Baywood and stayed in apartment 106 in the Stoneybrook complex, the remnants of a Social Security card issued to Than Thi Tran, who stayed at apartment 107 Stoneybrook and was married to Khuong Vay Hoang who owned the house on Troon, a mortgage statement issued to Khuong Vay Hoang for the house on Troon, a photograph of Henry Tran sitting in front of the house on Red Clover, owned by Mr. Vu, and an electric bill for the house on Troon addressed to Tuan Do, who was hired by Henry Tran to care for the marijuana plants in the house on Troon. In addition, at Autumnwood, investigators found pictures of Khuong Vay Hoang, Tuan Do, Phu Hoang, Henry Tran, Mr. Vu, Than Thi Tran, and Houng Nguyen sitting around a table. In apartment 106 in the Stoneybrook complex, which was rented to Hoa Kim Tran and Than to Tran, who also owned the house on Baywood, investigators found mail addressed to Khuong Vay Hoang at the house on Troon, Mr. Vu's United States certificate of naturalization, and photographs of both Mr. and Mrs. Vu. In apartment 107 in the Stoneybrook complex, which was occupied by Khuong Vay Hoang (who

owned the house on Troon), Than Thi Tran, and Phu Hoang, investigators discovered an insurance policy for the house on Red Clover listing the insured as Mr. Vu and a warranty deed for the house on Red Clover. The search of the house on Red Clover revealed a title to a Dodge Caravan which was transferred from Henry Tran to Mr. Vu, as well as a bank statement for the house on Troon.

{¶29} Additionally, the connection among the individuals discussed above was supported by testimony from Tuan Do, who was hired by Henry Tran to take care of the marijuana plants in the house on Troon and John Nguyen, who is the son of Hoa Kim Tran and Than To Tran. Tuan Do testified that he initially stayed at Grand Lake apartment 102 with Henry Tran and shortly thereafter began staying at the house on Troon. Tuan Do was responsible for watering the marijuana plants; Henry Tran and Phu Hoang explained how to care for the plants. Tuan Do testified that at one point he went out to dinner with Henry Tran and Henry Tran's friends who included Khuong Vay Hoang, Phu Hoang, Mr. Vu, Mrs. Vu, Than Thi Tran and Houng Nguyen. Following the dinner, Tuan Do saw Mr. and Mrs. Vu once at Henry Tran's apartment and once at his house on Autumnwood. In addition, Tuan Do observed Than Thi Tran, Khuong Vay Hoang and Phu Hoang again at Henry Tran's apartment. He also saw Hoa Kim Tran and Than To Tran at Henry Tran's apartment and house. At the house on Troon, Tuan Do saw Phu Hoang, Khuong Vay Hoang, and Than Thi Tran. Tuan Do testified that sometimes, including times when Mr. and Mrs. Vu were present, the group would talk about growing marijuana. Tuan Do testified that in late May 2006, there was a barbeque at the house on Troon; he testified that they had the barbeque to make it look like a family was living there.

{¶30} John Nguyen testified that his parents socialized regularly with Henry Tran, Houng Nguyen, Tuan Nguyen, Mrs. Vu, Mr. Vu, Dung Ha, Than Thi Tran, and Phu Hoang.

John Nguyen further testified that he and his parents would go to Mr. Vu's house on Red Clover once or twice a week and that Henry Tran and Houng Nguyen would go there, too. He stated that on one occasion there was a barbeque at Red Clover at which Mr. and Mrs. Vu, Houng Nguyen and Than To Tran were present. At that barbeque, John Nguyen was told not to go into the basement at Red Clover; however, he did anyway and discovered marijuana plants which were comparable in size to the full grown plants discovered in the search of the house on Troon.

{¶31} In light of the evidence presented at trial, which is only partially summarized above, and in light of the limited argument raised by Mr. Vu, we conclude that the State presented sufficient evidence, if believed, which would allow the jury to find Mr. Vu guilty on counts two through eight. The grow operations in this matter were strikingly similar in setup and in equipment and supplies used. Mr. Vu was connected to various other people and residences involved. In addition, a substantial grow operation was found in Mr. Vu's own home. Further, the jury could have reasonably been perplexed by the fact that important documents belonging to Mr. Vu were located in other residences; residences that were also linked to the marijuana grow operations. While it is true that it is possible that there could have been an innocent explanation for Mr. Vu's connection to the other suspects, the evidence, when viewed in a light most favorable to the prosecution, would reasonably allow the jury to conclude that Mr. Vu possessed and cultivated marijuana, was involved in a conspiracy to possess and cultivate marijuana, and that Mr. Vu was likewise complicit in such. Accordingly, we overrule Mr. Vu's second assignment of error.

## ASSIGNMENT OF ERROR IV

THE INDICTMENT, ON ITS FACE, IS FATALLY DEFECTIVE IN THAT IT FAILS TO PROPERLY SPECIFY A SUBSTANTIAL, OVERT ACT UNDERTAKEN IN FURTHERANCE OF THE CONSPIRACY; FAILS TO ALLEGE A SUBSTANTIAL, OVERT ACT THAT IS CRIMINAL IN

NATURE; ALLEGES AS A SUBSTANTIAL, OVERT ACT CONDUCT THAT IS CONSTITUTIONALLY PROTECTED.

**{¶32}** Mr. Vu asserts in his fourth assignment of error that the indictment is fatally defective in charging conspiracy.

**{¶33}** We note there is no motion to dismiss the conspiracy counts in the record filed on appeal, nor is there a transcript containing an oral motion. Nonetheless, there is a journal entry in the record which states that "[u]pon the motion of the Defendant to dismiss counts 2, 3, 6, and 7 of the indictment, this matter is herein scheduled for hearing on April 19, 2007 * * * ." However, the transcript of the proceedings of April 2, 2007, indicates that Mr. Vu's counsel waived a hearing on the motion. In addition, the only mention of the contents of Mr. Vu's motion occurs at the April 2, 2007 hearing wherein Mr. Vu's counsel declares that he "filed a motion to dismiss the indictment based on the overt acts." No further information is provided in the record, and there does not appear to be a ruling on Mr. Vu's motion. This Court has repeatedly said that "[i]t is an appellant's burden to ensure that the record is complete on appeal." *Vu,* 2012–Ohio–746, at ¶ 27. As we do not know the contents of Mr. Vu's motion to dismiss, we cannot say that the specific argument he raises here, i.e. that it is not permissible for the State to list multiple acts to meet the requirement stated in *Childs*, is preserved. Moreover, as Mr. Vu has not argued plain error on appeal, we decline to address this portion of his argument. *Id.* at ¶ 15.

**{¶34}** Nonetheless, this Court can address whether Mr. Vu's indictment was fatally defective on its face. *See id.* at ¶ 14. "A conspiracy conviction is void if the indictment upon which it is prefaced does not 'allege some specific, substantial, overt act performed in furtherance of the conspiracy.'" *Id.,* quoting *State v. Childs,* 88 Ohio St.3d 194 (2000), syllabus. Mr. Vu's indictment listed multiple overt acts, charged in the alternative, making it

distinguishable from the indictment the Supreme Court found problematic in *Childs,* which failed to list any overt act. *See Childs* at 199. Accordingly, we overrule Mr. Vu's fourth assignment of error.

## ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION REQUESTING A MORE SPECIFIC BILL OF PARTICULARS.

**{¶35}** Mr. Vu asserts in his seventh assignment of error that the trial court erred in denying his motion for a specific bill of particulars. We do not agree.

**{¶36}** Mr. Vu was originally indicted in June 2006. On July 18, 2006, Mr. Vu filed a motion for a bill of particulars. The State filed a bill of particulars on August 2, 2006. Mr. Vu never filed any motions asserting that the State's response was insufficient. However, on October 16, 2006, Mr. Vu did file a motion seeking a specific bill of particulars with respect to the counts contained in the supplemental indictment. The supplemental indictment was filed on August 17, 2006, and Mr. Vu was arraigned on the supplemental counts on August 25, 2006.

**{¶37}** As this Court noted in *Vu*, "[a] defendant must request a bill of particulars within twenty-one days of the arraignment." *Id.* at ¶ 29, citing *State v. Wigle,* 9th Dist. No. 25593, 2011–Ohio–6239, ¶ 26, citing Crim.R. 7(E). Mr. Vu was arraigned on the counts for which he sought a bill of particulars on August 25, 2006; yet, he did not file his motion until October 16, 2006. Thus, under this Court's precedent, Mr. Vu's motion was untimely. Nonetheless, Crim.R. 7(E) also contains a provision permitting the trial court to order a bill of particulars irrespective of timing.

> A bill of particulars has a limited purpose-to elucidate or particularize the conduct of the accused alleged to constitute the charged offense. A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery. Thus, * * * [o]rdinarily, specifications as to date and time would not be required in a bill of particulars since such information does not

> describe particular conduct, but [instead describes] only when that conduct is alleged to have occurred, knowledge of which * * * is generally irrelevant to the preparation of a defense.

(Alterations sic.) (Internal quotations and citations omitted.) *State v. Sellards,* 17 Ohio St.3d 169, 171 (1985). Nonetheless, "the state must, in response to a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possesses such information." *Id.*

{¶38} "A trial court must consider two questions when a defendant requests specific dates, times or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense." *State v. Lawrinson*, 49 Ohio St.3d 238, 239 (1990). "If these two questions are answered in the affirmative, then the state must include the information in the bill of particulars." *Id.*

{¶39} Aside from Mr. Vu's fourth assignment of error, which we have overruled, he does not assert that the nature of the charges was not disclosed to him. In his motion for a specific bill of particulars, and on appeal, Mr. Vu asserts that the specific dates, times, and places in the indictment were necessary to his defense as they would allow him to supply alibi witnesses. Notably, however, Mr. Vu never filed a Crim.R. 12.1 notice of intent to rely upon alibi. *See Vu*, 2012-Ohio-746, at ¶ 31. Specifically on appeal, Mr. Vu asserts that, if he had the information testified to by the State's informant, Tuan Do, prior to trial, he would have been able to better defend himself, presumably through alibi testimony. Mr. Vu states in his brief that, at trial, Tuan Do "testified that he was invited to Brunswick by Henry Tran in April or May of 2006; he came to live and grow marijuana in May 2006; and, after a few weeks in May he resided at Troon Avenue." However, Mr. Vu had this information prior to trial. The

supplemental discovery provided by the State on November 17, 2006, included a summary of the interview of Tuan Do. That summary indicates, that before Tuan Do was arrested on June 15, 2006, he had only been in Ohio for one to two months, that he was staying with Henry Tran in Brunswick, and that he ultimately came to be hired to tend the grow house on Troon Avenue. Thus, even assuming that Mr. Vu was entitled to a bill of particulars, and in light of Mr. Vu's specific argument on appeal, he has not demonstrated that he suffered any prejudice from the trial court's denial of his request. *See State v. Chinn*, 85 Ohio St.3d 548, 569 (1999); *see also Vu* at ¶ 31. We overrule his seventh assignment of error.

### ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE RESULTING FROM A SERIES OF SEARCH WARRANTS FOR LACK OF STANDING.

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE RESULTING FROM THE SEARCH WARRANT OF HIS RESIDENCE APARTMENT AND RESIDENCE HOUSE WHEN FAILING FOR SPECIFICITY AND PROBABLE CAUSE.

{¶40} In Mr. Vu's fifth and sixth assignments of error, he challenges the denial of his motion to suppress evidence seized from a series of search warrants.

{¶41} Generally, "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review its application of the law to the facts de novo. *State v. Metcalf*, 9th Dist. No. 23600, 2007–Ohio–4001, ¶ 6.

{¶42} In his fifth assignment of error, Mr. Vu asserts that the trial court erred in concluding that he lacked standing to challenge the search of certain unspecified residences. We

note that multiple motions to suppress were filed in the trial court; however, this Court can locate none which raise the detailed arguments that Mr. Vu asserts were made.

{¶43} Nonetheless, at one of the pretrial hearings, there is a discussion of a motion to suppress wherein Mr. Vu's standing is challenged by the State. The trial court noted that the State conceded that Mr. Vu had standing to challenge the search of the house on Red Clover and the Stoneybrook apartment 104, as the State conceded that Mr. Vu either owned the premises or lived there. Instead, the State challenged Mr. Vu's standing to contest the validity of the searches at the remaining homes and apartments. At the hearing, Mr. Vu's counsel stated that he had "no witness to establish [Mr. Vu had] an interest." The trial court then asked if Mr. Vu's counsel had any evidence to establish that Mr. Vu had "[a]ny protected privacy interest[]" in the other properties. Mr. Vu's counsel replied that he had no witnesses to establish that.

> The United States Supreme Court has found that the capacity to claim the protection of the Fourth Amendment depends * * * upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. Such an expectation is legitimate only if it is one that society is prepared to recognize as reasonable. Furthermore, [t]he burden is upon the defendant to prove facts sufficient to establish such an expectation.

(Alterations sic.) (Internal quotations and citations omitted.) *State v. McCoy*, 9th Dist. No. 08CA009329, 2008-Ohio-4947, ¶ 6.

{¶44} Here, Mr. Vu did not present any evidence that he had a legitimate expectation of privacy in the other homes and apartments. Further, despite Mr. Vu's argument that this Court should conclude that Mr. Vu automatically had standing because he was charged with "a possessory crime," this notion has been rejected by the United States Supreme Court in favor of the standard set forth above. *Vu,* 2012-Ohio-746, at ¶ 24. Accordingly, we can only agree with the trial court's conclusion that Mr. Vu did not meet his burden to establish standing. *See id.* at ¶ 22.

{¶45} Moreover, we are not persuaded by Mr. Vu's argument that he was "fatally conflicted in asserting his Fifth Amendment right not to incriminate himself and in providing information to establish a possessory interest in the premises where the bulk of the criminal conduct occurred." As this Court has previously noted, "any evidence []he introduced at the suppression stage to prove that []he had a possessory interest would not have been admissible against h[im] at trial on the issue of guilt." *Id.* at ¶ 24. Thus, in light of the arguments presented, we overrule Mr. Vu's fifth assignment of error.

{¶46} In his sixth assignment of error, Mr. Vu asserts that the trial court erred in denying his motion to suppress evidence obtained pursuant to search warrants issued on his house and his apartment. Specifically, Mr. Vu asserts the warrants failed to meet the particularity requirement and that the warrants also failed to establish probable cause. Because the warrants Mr. Vu challenges are not part of the record, preventing us from reviewing them, we overrule Mr. Vu's sixth assignment of error. *See Vu,* 2012–Ohio–746, at ¶ 26-27.

ASSIGNMENT OF ERROR VIII

> THE STATE OF OHIO VIOLATED THE DEFENDANT'S DUE PROCESS RIGHTS AS DESCRIBED IN <u>BRADY V. MARYLAND</u>.

{¶47} Mr. Vu asserts in his eighth assignment of error that the State violated *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to turn over, inter alia, surveillance footage, telephone calls from Medina County Jail, and communications with federal and state agencies concerning Mr. Vu or other co-defendants.

{¶48} *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "The rule of *Brady * * *,* arguably applies in three quite different situations. Each involves the discovery,

after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

{¶49} We note that Mr. Vu does not actually assert that the allegedly suppressed evidence is favorable to him or material to the issue of his guilt or punishment. *Brady* at 87. Instead, Mr. Vu asserts that the evidence was subject to disclosure. Mr. Vu cites no other law in support of this proposition. *See* App.R. 16(A)(7). Moreover, a general claim that the evidence was subject to disclosure pursuant to the discovery rules is outside the scope of Mr. Vu's assignment of error, which only asserts a *Brady* violation. Accordingly, in light of the argument made, we fail to see how the evidence at issue was *Brady* material. *See id.* Mr. Vu's eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR IX

THE TRIAL COURT ERRED IN ITS INSTRUCTION ON COMPLICITY AND CONSPIRACY.

{¶50} In Mr. Vu's ninth assignment of error, he asserts that the trial court committed error in instructing the jury. We do not agree.

{¶51} Mr. Vu did not object to the jury charge, and thus, has forfeited all but plain error. *See State v. Murphy*, 9th Dist. No. 24753, 2010-Ohio-1038, ¶ 7.

> Under Crim.R. 52(B), [p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be plain within the meaning of Crim.R. 52(B), an error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights. We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Internal citations and quotations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶52} This Court has confronted a similar argument based on the same jury charge. *See Vu,* 2012-Ohio-746, at ¶ 42. As in *Vu*, Mr. Vu similarly asserts that the trial court's instruction failed to inform the jury of the elements of the principal crimes underlying his conspiracy charges and the kind of culpability required for the commission of a complicity offense. *See id.* Mr. Vu's argument is difficult to follow as he fails to point to any portion of the jury instructions demonstrating the alleged flaws. *See id.*

{¶53} "The trial court instructed the jury of the principal offense for each conspiracy and complicity charge, as well as the elements of possession and cultivation, the two principal offenses. The trial court also instructed the jury as to the mens rea for those offenses. The errors that [Mr.] Vu alleges are not clear on the face of the record[,]" and, accordingly, cannot constitute plain error. *Id.* We overrule Mr. Vu's ninth assignment of error.

ASSIGNMENT OF ERROR X

THE TRIAL COURT ERRED IN PERMITTING CONSOLIDATION AND DENYING THE DEFENDANT'S MOTION TO SEVER THE TRIALS.

{¶54} Mr. Vu asserts in his tenth assignment of error that the trial court erred in denying his motion to sever and permitting the State to consolidate Mr. Vu's case with his wife's.

{¶55} Mr. Vu's underdeveloped argument is nearly identical to the argument his wife made in her appeal. "A defendant claiming prejudice by the joinder of offenses may move for severance under Crim.R. 14." (Internal citations and quotations omitted.) *Vu,* 2012-Ohio-746, at ¶ 37. "To preserve a claimed error under Crim.R. 14, however, a defendant must renew his or her motion to sever either at the close of the State's case or at the conclusion of all of the evidence." *Id*. Mr. Vu forfeited this argument by failing to renew his motion to sever. *See id.* at ¶ 37-38. Accordingly, we overrule Mr. Vu's tenth assignment of error.

ASSIGNMENT OF ERROR XI

THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S
MOTION TO DISCLOSE THE IDENTITY OF THE INFORMANT(S).

**{¶56}** Mr. Vu asserts in his eleventh assignment of error that the trial court erred in

failing to grant Mr. Vu's motion to disclose the identity of confidential informant(s).

**{¶57}** Mr. Vu filed a motion to disclose the identity of the informant in the trial court.  It

appears from the record that, at some point in its investigation, the State utilized two confidential

informants.  At a hearing where this issue was discussed, Mr. Vu's counsel stated  that:

> In this case, there are two informants, one of which is the informant in Seattle,
> Washington, who in approximately April[] 2006, contacted Medway.

> They never disclosed who that is, or what agency.

> The second informant is an informant in Pennsylvania who provided the state
> with information alleging that Khuong Hoang purchased approximately $16,000
> of grow equipment.

> They never disclosed who that person is, is that person an agent or not an agent,
> informant or not an informant, we know nothing about that, but the allegation
> from the prosecutor's office.

**{¶58}** Despite the fact that this issue was discussed at a hearing, the trial court never

officially ruled on Mr. Vu's motion.  "[W]hen a trial court fails to issue a ruling on a pretrial

motion, this Court presumes that the motion was denied."  (Internal quotations and citation

omitted.)  *Vu,* 2012-Ohio-746, at ¶ 33.

**{¶59}** "This Court will not disturb a trial court's ruling on a motion to disclose a

confidential informant's identity absent an abuse of discretion."  *State v. Smith*, 9th Dist. No.

21069, 2003-Ohio-1306, ¶ 62.  "The state has a privilege to withhold from disclosure the

identities of those who give information to the police about crimes."  *State v. Bays,* 87 Ohio

St.3d 15, 24 (1999).  However, "[t]he identity of an informant must be revealed to a criminal

defendant when the testimony of the informant is vital to establishing an element of the crime or

would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *State v. Williams*, 4 Ohio St.3d 74 (1983), syllabus.

> [C]ourts have compelled disclosure in cases involving an informer who helped to set up the commission of the crime and who was present at its occurrence whenever the informer's testimony may be helpful to the defense. * * * In contrast, where the informant merely provided information concerning the offense, the courts have quite consistently held that disclosure is not required.

(Internal quotations and citations omitted.) *Bays* at 25.

{¶60} In the instant matter, the informants at issue did not testify at trial, and the State did not rely on them in establishing elements of the crime. *See Williams* at syllabus. Although difficult to discern given the limited references to any informants in the record, it appears the information provided by the informants led the State to conduct its own investigation which led to information that led to the charges. Mr. Vu asserted in the trial court and on appeal that learning the informant's identity was "essential to a fair determination on the issue of the content of the conversation between [Mr. Vu] and police officers where the informant was present during said conversation * * * ." Mr. Vu's assertion is confusing and unclear. Mr. Vu points to nothing in the record that even indicates that any informant was present with police while police talked to Mr. Vu. Mr. Vu does not indicate when this conversation took place or how this particular conversation is important. This Court is unclear how learning the identity of the informants would aid in the fair determination of the content of a conversation Mr. Vu had with the police or how it would benefit Mr. Vu in his defense. *See* App.R. 16(A)(7). The remainder of Mr. Vu's argument asserts an informant "provided information regarding a sale of marijuana grow equipment[,]" without indicating how learning the identity of the informant would be helpful or beneficial to him in preparing a defense. *See Williams* at syllabus; *see also* App.R. 16(A)(7). Accordingly, based on Mr. Vu's limited and speculative argument, we fail to conclude that the

trial court abused its discretion in refusing to require the State to disclose the identity of the informant. *See Vu,* 2012-Ohio-746, at ¶ 35. Mr. Vu's eleventh assignment of error is overruled.

ASSIGNMENT OF ERROR XII

THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO CONSECUTIVE SENTENCES.

{¶61} Mr. Vu asserts in his twelfth assignment of error that the trial court erred in imposing consecutive sentences. We do not agree.

{¶62} When reviewing a felony sentence, a plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. The Court stated:

> First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id*.

{¶63} Mr. Vu has not asserted that his sentence is contrary to law; instead, he asserts that the trial court abused its discretion in sentencing him to consecutive sentences. He asserts the trial court abused its discretion in imposing consecutive sentences because (1) "there is no indication that the court individually considered this case[;]" and (2) "[t]here is no record relevant to sentencing that indicates the sentencing court made any particular considerations or findings with regard to the sentence or decision to run sentences consecutively."

{¶64} "In *State v. Foster*, 109 Ohio St.3d 1, * * * 2006-Ohio-856, the Supreme Court of Ohio held that '[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.'" *State v. Murray*, 9th Dist. No. 25250,

2010-Ohio-5984, ¶ 8, quoting *Foster* at paragraph seven of the syllabus. Thus, assuming, the trial court failed to make findings or provide reasoning, its actions were not even erroneous, and so cannot rise to the level of an abuse of discretion.

{¶65} At Mr. Vu's original sentencing hearing in 2007, the trial court did provide reasoning for its sentence. It indicated that it was imposing the sentence it did because Mr. Vu's "involvement in this, being the titled owner of the property, is greater than other people's culpability in this, and given the fact that the state of Ohio has chosen to elect mandatory terms on some of these offenses, this is the best way I can accomplish the goal of doing justice and also punish him for his offenses." Despite being remanded for resentencing due to improper post-release control notification, the trial court subsequently imposed the same prison term. It is logical to conclude that the trial court's reasoning at resentencing was similar to its initial reasoning. After a review of the record, we cannot say that the trial court's sentence was arbitrary or unreasonable. Accordingly, we overrule Mr. Vu's twelfth assignment of error.

III.

{¶66} In light of the foregoing, we overrule Mr. Vu's twelve assignments of error and affirm the judgment of the Medina County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

THOMAS J. MORRIS, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.