[Cite as *State v. Saravia*, 2012-Ohio-1443.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

VICTOR SARAVIA

    Appellant

C.A. No.    25977

APPEAL FROM JUDGMENT
ENTERED IN THE
BARBERTON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    10TRC6861

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** The Copley Police Department received a telephone call from an individual who said that he was following a dark-colored black or blue four-door BMW and that the driver of the car appeared to be intoxicated. According to the caller, the car was being driven erratically and had almost run someone off the road. The caller said that he was driving southbound on Interstate 77 and that he saw the car pull to the side of the road near Ridgewood Road. The dispatcher relayed the information to police officer Joel Marnet, who was travelling southbound on Interstate 77 at the time. When Officer Marnet reached the area of Ridgewood Road, he saw a blue BMW that matched the description given by the caller on the side of the road in the location provided by the caller. Officer Marnet initiated a traffic stop and approached the driver's window. From a distance of two or three feet, he smelled a strong odor of alcohol coming from the driver, Victor Saravia. Mr. Saravia had bloodshot eyes and extreme difficulty

getting his license out of his wallet. Officer Marnet, therefore, had Mr. Saravia get out of the car to perform field sobriety tests. After Mr. Saravia failed each of the tests, Officer Marnet arrested him for operating a vehicle under the influence of alcohol. Mr. Saravia subsequently registered .107 on a blood-alcohol concentration test. Mr. Saravia moved to suppress the evidence against him, arguing that Officer Marnet did not have reasonable suspicion to stop him or make him perform field sobriety tests. He also argued that the officer did not have probable cause to arrest him. After the trial court denied his motion, Mr. Saravia pleaded no contest to the charges, and the municipal court found him guilty of operating a vehicle under the influence. Mr. Saravia has appealed, arguing that the municipal court incorrectly denied his motion to suppress and incorrectly refused to admit a video of his booking. We affirm because Officer Marnet had reasonable suspicion to stop Mr. Saravia and conduct field sobriety tests, the officer had probable cause to arrest Mr. Saravia, and Mr. Saravia did not proffer a copy of the booking video.

## MOTION TO SUPPRESS

{¶2} Mr. Saravia's first assignment of error is that the municipal court incorrectly denied his motion to suppress. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. *But see State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶ 8.

REASONABLE SUSPICION

**{¶3}** Mr. Saravia has argued that Officer Marnet did not have reasonable suspicion to stop him because he did not personally observe any suspicious conduct and could not recall many of the details provided by the dispatcher. He has also argued that the court could not credit the caller's statements as being more truthful than his own testimony because the caller did not testify at the hearing.

**{¶4}** Initially, we note that the State has not suggested that Officer Marnet's actions did not constitute an investigatory stop under the Fourth Amendment. Although a police officer generally may not seize a person within the meaning of the Fourth Amendment unless he has probable cause to arrest him for a crime, "not all seizures of the person must be justified by probable cause . . . ." *Florida v. Royer*, 460 U.S. 491, 498 (1983). "A police officer may stop a car if he has a reasonable, articulable suspicion that a person in the car is or has engaged in criminal activity." *State v. Kodman*, 9th Dist. No. 06CA0100-M, 2007-Ohio-5605, at ¶ 3 (citing *State v. VanScoder*, 92 Ohio App. 3d 853, 855 (1994)). Before initiating such a stop, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id*. at 21-22 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

**{¶5}** In this case, Officer Marnet did not observe any suspicious driving. By the time he came upon Mr. Saravia's car, it was already on the side of the road. His only reason for initiating a traffic stop was the dispatch he received based on the call to the Copley Police

Department. According to Officer Marnet, he stopped the car because it was in the location provided by the caller, matched the description given by the caller, and there were no other cars on the road at that hour of the morning, which was around 4:30 a.m.

{¶6} The Ohio Supreme Court has held that, if "an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." *Maumee v. Weisner*, 87 Ohio St. 3d 295, paragraph one of the syllabus (1999). It has also held that "[a] telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." *Id*. at paragraph two of the syllabus. "Factors considered 'highly relevant in determining the value of [the informant's] report' are the informant's veracity, reliability, and basis of knowledge." *Id*. at 299 (quoting *Alabama v. White*, 496 U.S. 325, 328 (1990)).

{¶7} "[C]ourts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant." *Maumee v. Weisner*, 87 Ohio St. 3d 295, 300 (1999). In this case, the caller provided his complete name, telephone number, and home address, meaning he was an identified citizen informant. *See id*. at 302 (concluding that caller who provided his name, cellular telephone number, and home telephone number was an identified citizen informant even though that information could have been fabricated). Compared to the other categories of informants, the "identified citizen informant" is generally considered to be highly reliable, especially because a fabricated report could subject him to criminal liability. *Id*. at 300-301

{¶8} Although the caller in this case was an identified citizen informant, that fact is only "one element of our totality of the circumstances review of [the] informant's tip." *Maumee v. Weisner*, 87 Ohio St. 3d 295, 302 (1999). Other factors, however, also suggest that the caller was reliable. Similar to the call at issue in *Weisner*, the tip in this case "was an exact relay of the circumstances as they were occurring. Immediately upon witnessing the events, the [caller] described them to the dispatcher." *Id.* The tip was also made "from the perspective of a motorist sharing the road with another motorist driving erratically." *Id.* We, therefore, "can reasonably infer . . . that he considered [Mr. Saravia] a threat to him personally as well as to other motorists and that he was motivated, therefore, not by dishonest and questionable goals, but by his desire to eliminate a risk to the public's safety." *Id.*

{¶9} Upon review of the totality of the circumstances, we conclude that the identified citizen informant's tip contained sufficient indicia of reliability to justify Officer Marnet's investigative stop. It is immaterial that Officer Marnet did not know all of the details that the caller had reported to the dispatcher. *Maumee v. Weisner*, 87 Ohio St. 3d 295, 297 (1999) ("A police officer need not always have knowledge of the specific facts justifying a stop and may rely . . . upon a police dispatch or flyer."). It is also immaterial that the caller did not testify at the suppression hearing because the question was not whether the caller actually saw what he told the dispatcher, but whether Officer Marnet could reasonably rely on what he said to the dispatcher on the night of the stop.

{¶10} Mr. Saravia has also argued that Officer Marnet did not have reasonable suspicion to conduct field sobriety tests. "[A] police officer does not need probable cause to conduct a field sobriety test; rather, he must simply have a reasonable suspicion of criminal activity." *State v. Napier*, 9th Dist. No. 11CA0006, 2012-Ohio-394, at ¶ 16.

{¶11} Officer Marnet testified that, when he approached the car and began speaking with Mr. Saravia, he observed that Mr. Saravia's eyes were glassy and bloodshot. He also smelled an odor of alcoholic beverages coming from Mr. Saravia and, later, watched Mr. Saravia have a lot of difficulty removing his identification from his wallet. Upon review of the record, we conclude that there were sufficient specific articulable facts to support a reasonable suspicion of criminal activity to allow Officer Marnet to conduct field sobriety tests. *See State v. Osborn*, 9th Dist. No. 07CA0054, 2008-Ohio-3051, at ¶9 (collecting cases in which courts approved field sobriety testing after an officer noticed the odor of alcohol coming from the defendants).

{¶12} Mr. Saravia has further argued that Officer Marnet lacked probable cause to arrest him and take him to the police station for a blood-alcohol concentration test. To determine whether a police officer had probable cause to arrest an individual for operating under the influence, we consider whether, under the totality of the facts and circumstances surrounding the arrest at the moment of arrest, the officer "had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St. 3d 421, 427 (2000).

{¶13} Officer Marnet testified that he administered three field sobriety tests, the horizontal gaze nystagmus, the walk-and-turn, and the one-leg stand tests. He testified that he saw "clues" during each test that suggested Mr. Saravia was intoxicated. He saw four clues during the horizontal gaze nystagmus test, two clues during the walk-and-turn test, and two clues during the one-leg stand test. According to Officer Marnet, an individual fails the horizontal gaze nystagmus test if there are four or more clues during the test and fails the other tests if there are two or more clues during the tests. Mr. Saravia, therefore, failed each of the tests even though he completed them. Officer Marnet also testified that, if someone fails the horizontal

gaze nystagmus test and one of the other two tests, there is an 80 percent chance that the individual's blood-alcohol concentration is above the legal limit.

{¶14} Upon review of the totality of the circumstances, including Mr. Saravia's glassy, bloodshot eyes, his strong odor of alcohol, his difficulty with his wallet, and his failure of three different field sobriety tests, we conclude that Officer Marnet had probable cause to arrest Mr. Saravia for operating a vehicle under the influence. Mr. Saravia's first assignment of error is overruled.

BOOKING VIDEO

{¶15} Mr. Saravia's second assignment of error is that the municipal court incorrectly refused to view a copy of the police department's booking video. The municipal court refused to watch the video because it reasoned that nothing on the video would be relevant regarding whether Officer Marnet had reasonable suspicion to stop Mr. Saravia or probable cause to arrest him. Mr. Saravia has argued that the court ignored the fact that Officer Marnet testified that he mumbled or slurred his speech during the booking process. He has argued that the video would have verified that he was sober during the incident and that Officer Marnet was not credible.

{¶16} After Officer Marnet testified at the suppression hearing, Mr. Saravia's lawyer asked the trial court to watch the booking video. The prosecutor objected, arguing that the video was not relevant because it was after the arrest. Mr. Saravia's lawyer responded that the video was relevant because of the questions he asked on cross-examination. The lawyer noted that he had asked Officer Marnet whether Mr. Saravia had complained of having a problem with his eye during the time he was booking him and the officer had said that he did not remember it. The lawyer said that the booking video would establish that Mr. Saravia complained about his eye to Officer Marnet. The judge explained that, if Mr. Saravia had experienced eye problems while

being given the field sobriety tests, it would be an issue he would take into consideration. The fact that he may have experienced a problem with his eye at the police station, however, was not relevant regarding whether the officer had probable cause to arrest him.

{¶17} Mr. Saravia did not argue to the municipal court that the booking video would show that Mr. Saravia's speech was not slurred when he spoke to officers at the police station. This Court will not consider arguments made by an appellant for the first time on appeal. *State v. McIntyre*, 9th Dist. No. 25666, 2011-Ohio-3668, at ¶ 5. In addition, Officer Marnet did not cite Mr. Saravia's slurred speech as the reason he gave him field sobriety tests or arrested him. Furthermore, Mr. Saravia did not proffer a copy of the booking video for the record. Accordingly, this Court is unable to determine whether there is anything on the video that would have been relevant at the suppression hearing. *See* Evid. R. 103(A)(2); *State v. Velez*, 9th Dist. No. 11CA009999, 2011-Ohio-5220, at ¶ 6 ("Without reviewing the excluded evidence, this Court is unable to determine whether the evidence was admissible . . . and, if so, whether the trial court's exclusion of it affected a substantial right of the [appellant]."). Mr. Saravia's second assignment of error is overruled.

## CONCLUSION

{¶18} Officer Marnet had reasonable suspicion to stop Mr. Saravia based on the call of the identified citizen informant and had probable cause to arrest him for driving under the influence of alcohol. The judgment of the Barberton Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, P. J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶19} I concur in judgment only as I do not agree that a traffic stop occurred here. Also, I would overrule the second assignment of error solely on the basis that the booking video was not proffered.

APPEARANCES:

MYRON P. WATSON, Attorney at Law, for Appellant.

MICHELLE BANBURY, Assistant Prosecuting Attorney, for Appellee.