[Cite as *State v. Jackson*, 2012-Ohio-3785.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
|  | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) |  |

STATE OF OHIO

    Appellee

    v.

JASON T. JACKSON

    Appellant

C.A. No.     26234

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2010-11-3045

DECISION AND JOURNAL ENTRY

Dated: August 22, 2012

WHITMORE, Presiding Judge.

{¶1}    Defendant-Appellant, Jason Jackson, appeals from his conviction in the Summit County Court of Common Pleas.  This Court affirms.

I

{¶2}    In August 2010, N.J. admitted to her mother that her father, Jackson, had sexually abused her.  The abuse occurred toward the end of June 2010 when N.J. had spent the night alone with her father and much younger brother.  N.J. stated that her father took her into his bedroom and told her to take off her pants.  Her father then came near her on the bed and touched her with his fingers "in [her] privacy area."  N.J. was eleven years old at the time.

{¶3}    When the police interviewed Jackson regarding N.J.'s allegations, he denied that he ever abused her.  He then consented to undergo a polygraph examination.  When Jackson finished the polygraph examination, the examiner informed him that several of his answers were deceptive in nature and asked him to explain himself.  Jackson then verbally confessed that he

had touched his daughter. He also completed a written statement in which he wrote: "penis was on bare butt and rubbed on vagina" and "while finger was rubbing it went up and down the vagina not inside."

{¶4} A grand jury indicted Jackson on the following counts: (1) rape, in violation of R.C. 2907.02(A)(2); and (2) two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). Jackson filed a motion to suppress any oral or written statements he made at the time of his polygraph examination. The trial court held a suppression hearing, but ultimately denied the motion. A jury trial then commenced. The jury found Jackson guilty of a single count of gross sexual imposition and not guilty of the remaining counts. The trial court sentenced Jackson to five years in prison and classified him as a Tier II Sex Offender/Child Victim Offender Registrant.

{¶5} Jackson now appeals from his conviction and raises four assignments of error for our review. For ease of analysis, we rearrange and consolidate several of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶6} In his first assignment of error, Jackson argues that the trial court erred by denying his motion to suppress. Specifically, he argues that his statements to the polygraph examiner should have been suppressed because they were obtained through coercion in violation of his Fifth Amendment rights.

**{¶7}** The Ohio Supreme Court has held that:

> [a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

**{¶8}** Jackson asserts that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights before he spoke with the polygraph examiner and completed a written statement. He further argues that his confession was involuntary because he confessed as a result of coercion.

**{¶9}** "Pursuant to the Fifth Amendment of the United States Constitution, no person shall be compelled to be a witness against himself. * * * [S]tatements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed certain procedural safeguards." *North Ridgeville v. Hummel*, 9th Dist. No. 04CA008513, 2005-Ohio-595, ¶ 27, citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "A defendant may waive his/her *Miranda* rights, provided that the waiver was made knowingly, voluntarily and intelligently." *State v. Grunder*, 9th Dist. No. 04CA0071-M, 2005-Ohio-2145, ¶ 9. Before the strictures of *Miranda* even apply, however, a defendant must have been placed into custody and subjected to questioning by either law enforcement or a person acting as an agent of law

enforcement. *State v. Watson*, 28 Ohio St.2d 15, 26 (1971). *See also State v. Evans*, 144 Ohio App.3d 539, 554-555 (1st Dist.2001); *Estelle v. Smith*, 451 U.S. 454, 468-469 (1981) (law enforcement agent characteristics discussed).

{¶10} "Custody" for purposes of entitlement to *Miranda* rights exists only where there is a "'restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "Whether a suspect is in custody depends on the facts and circumstances of each case." *State v. Butler*, 9th Dist. No. 23786, 2008-Ohio-781, ¶ 27, quoting *State v. Dunn*, 9th Dist. No. 04CA008549, 2005-Ohio-1270, ¶ 24. The test is "whether, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave." *Butler* at ¶ 27, quoting *Dunn* at ¶ 24.

{¶11} Detective Shannon Davis testified that she contacted Jackson after receiving a report that Jackson's daughter had made allegations of sexual abuse against him. Detective Davis met with Jackson on September 22, 2010, and Jackson agreed to submit to a polygraph examination. Detective Davis scheduled the examination for October 19, 2010, at the Bureau of Identification and Investigation ("BCI") in Richfield. Jackson declined Detective Davis' offer to drive Jackson to BCI, so the two drove separately. On the morning of the examination, Detective Davis drove to Jackson's apartment where she found Jackson already waiting in his truck with his girlfriend. Jackson then followed Detective Davis to BCI in his truck and brought his girlfriend. When they arrived, Detective Davis took Jackson and his girlfriend to a waiting room so that she could notify the examiner they were there. Once the examiner arrived, Detective Davis left the room. She later watched the examination on a closed-circuit television. When the examination ended, Detective Davis testified, she informed Jackson that he was free to

leave. Jackson and his girlfriend then left BCI in his truck. Jackson's formal arrest did not occur until nearly two weeks later.

{¶12} Confronted with factual scenarios similar to the one at issue here, numerous appellate districts have determined that when a person voluntarily submits to a polygraph examination he or she is not in custody so as to trigger his or her *Miranda* rights. *See State v. Tussing*, 3d Dist. No. 8-10-11, 2011-Ohio-1727, ¶ 31; *State v. King*, 179 Ohio App.3d 1, 2008-Ohio-5363 (2d Dist.); *State v. Caulley*, 10th Dist. No. 97AP-1590, 2002 WL 392191, * 7-9 (Mar. 14, 2002); *State v. Jett*, 11th Dist. No. 97-P-0023, 1998 WL 258166, *6-8 (Mar. 31, 1998); *State v. Howell*, 4th Dist. No. 97CA636, 1997 WL 796509, *8 (Dec. 16, 1997); *State v. Krebs*, 6th Dist. No. H-91-7, 1991 WL 270411, *1-2 (Dec. 20, 1991); *State v. Smith*, 12th Dist. No. CA88-03-049, 1989 WL 121071, *3 (Oct. 16, 1989). We agree with the logic set forth in those decisions and conclude that Jackson was not in custody when he underwent a polygraph examination. Jackson voluntarily agreed to take the examination, drove to the examination of his own accord, and left in the same manner when the exam concluded. Detective Davis testified that Jackson was free to leave at any time. Moreover, the consent to interview form that Jackson signed before the polygraph was administered provided that Jackson was informed of his right to refuse to submit to the examination and that he was undergoing the examination of his own free will. The record reflects that Jackson was not in custody on October 19, 2010, the day he submitted to the polygraph examination. Because Jackson was not in custody at the time, his *Miranda* rights were inapplicable and could not have been violated. *See State v. Butler*, 9th Dist. No. 23786, 2008-Ohio-781, ¶ 26-28.

{¶13} "Even when *Miranda* warnings are not required, the Due Process Clause of the Fourteenth Amendment requires the exclusion of confessions that are involuntarily given by an

accused." *State v. Antoline*, 9th Dist. No. 02CA008100, 2003-Ohio-1130, ¶ 21. *Accord State v. Chase*, 55 Ohio St.2d 237, 246 (1978) ("[T]he question of whether the accused's statements were in fact voluntary is separate from the question of compliance with *Miranda*."). A confession cannot be said to be voluntary if, under the circumstances surrounding its procurement, the defendant's "will was overborne." *Id.*, quoting *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963).

> In determining whether a confession was voluntary, the court considers the totality of the circumstances, including the defendant's 'age, mentality, and prior criminal experience * * *[;] the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.

*Grunder*, 2005-Ohio-2145, at ¶ 9, quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), at paragraph two of the syllabus, *vacated on other grounds*, 438 U.S. 911 (1978). "Absent evidence that a defendant's will was overborne and that his capacity for self-determination was critically impaired because of coercive police conduct, the decision of a suspect to waive his right to Fifth Amendment privilege against self-incrimination is considered voluntary." *State v. Wooden*, 9th Dist. No. 23992, 2008-Ohio-3629, ¶ 7.

{¶14} Jackson argues that his confession was inadmissible because the polygraph examiner, Michael LoPresti, engaged in coercive and deceptive behavior to elicit it. Initially, we note that all of the transcript citations Jackson cites in support of this argument are citations to the trial transcript. Trial testimony, however, has no bearing upon a court's suppression ruling. Our review of a trial court's suppression ruling is limited to the testimony produced at the suppression hearing. *State v. Kurjian*, 9th Dist. No. 06CA0010-M, 2006-Ohio-6669, ¶ 13. The only two witnesses to testify at the suppression hearing were Detective Davis and LoPresti. Consequently, theirs is the only testimony relevant to this assignment of error. *Id.*

{¶15} Detective Davis observed the polygraph examination that LoPresti administered by way of a closed-circuit television. She testified that she did not observe any aggressive or hostile behavior on LoPresti's part and that LoPresti primarily sat in his chair with a clipboard. LoPresti testified that it takes him approximately two and a half to three hours to administer a polygraph. LoPresti spent over an hour with Jackson before the test reviewing the aspects of the test, having Jackson sign paperwork, and formulating all of the questions Jackson would be asked. LoPresti testified that he repeatedly informs his subjects that they are free to leave any time they wish, including in the middle of the test. LoPresti did, in fact, have Jackson complete a written *Miranda* waiver as a part of the consent to interview form that Jackson signed. The form reiterated Jackson's rights as LoPresti had orally presented them and also informed Jackson, in writing, that he could stop the examination at any time. Once the pre-testing portion of the exam was complete, LoPresti gave Jackson an opportunity to get water or use the restroom before the test commenced. He then administered the test, which resulted in Jackson giving several deceptive answers.

{¶16} Once LoPresti finished Jackson's exam, he began a post-examination interview. He informed Jackson that several of his answers were deceptive and that he had failed the polygraph. LoPresti then asked Jackson to explain himself and indicated that Jackson had the opportunity to tell the truth and to give LoPresti his side of the story. LoPresti also told Jackson that if he did not explain himself, others might take his polygraph failure "in the wrong sense" and "anything your daughter says will be believable." Jackson then gave LoPresti a verbal confession. LoPresti asked Jackson if he would like to write down his statement, and Jackson agreed. LoPresti testified that Jackson completed the written confession within ten to fifteen minutes after the examination had ended.

**{¶17}** The record does not contain any support for Jackson's assertion that his will was overborne as a result of coercive conduct. Jackson was 33 years old at the time of the examination and the consent to interview form he signed indicated that he finished the eleventh grade. *See Grunder*, 2005-Ohio-2145, at ¶ 9. There is no indication in the record that he did not understand the paperwork he signed, and he was not subjected to any deprivation or mistreatment before he confessed. *See id.* Further, the examination itself was not overly long. *See id.* Jackson confessed within fifteen minutes of the examination ending. Although LoPresti encouraged Jackson to explain himself and tell the truth so that his side of the story would be heard, "[a]dmonitions to tell the truth are considered to be neither threats nor promises and are permissible." *State v. Loza*, 71 Ohio St.3d 61, 67 (1994). *Accord In re Wilson*, 9th Dist. No. 16640, 1994 WL 700098, *3 (Dec. 14, 1994). Upon our review of the record, Jackson has not shown that his confession was procured by police coercion. *See State v. Powe*, 9th Dist. No. 21026, 2002-Ohio-6034, ¶ 7-10. Jackson's *Miranda* rights were not violated, and his confession was not involuntary. Consequently, the trial court did not err by denying his motion. *See Berghuis v. Thompkins*, ___ U.S. ___, 130 S.Ct. 2250, 2259–2264 (2010) (defendant's statements properly admitted when there was no indication that he did not understand his rights, his course of conduct indicated he waived his rights, and there was no evidence that his statement was coerced). Jackson's first assignment of error is overruled.

Assignment of Error Number Four

THE TRIAL COURT ERRED IN DENYING JACKSON'S MOTION FOR A MISTRIAL.

**{¶18}** In his fourth assignment of error, Jackson argues that the trial court erred by denying his motion for a mistrial. We disagree.

{¶19} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected. Great deference is afforded to a trial court's decision regarding a motion for mistrial. Accordingly, this Court reviews the denial of a motion for mistrial for an abuse of discretion." (Internal citations, alterations, and quotations omitted.) *State v. Howes*, 9th Dist. No. 24665, 2010-Ohio-421, ¶ 11. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶20} Jackson submitted to a polygraph examination, and the examiner determined that Jackson gave several deceptive answers. The actual results of the examination, however, were not introduced at trial. Instead, the State only sought to admit the confession Jackson made to LoPresti at the end of the examination. Because LoPresti received Jackson's confession, the State called him to testify. The State only referred to LoPresti as an interviewer during direct examination. The prosecutor framed Jackson's meeting with LoPresti as an investigative interview and never referenced LoPresti having administered a polygraph examination. On cross-examination, Jackson's counsel questioned LoPresti about why LoPresti had not recorded the interview with Jackson. The following exchange took place:

> [DEFENSE COUNSEL:] As I stand here today, I hate to imply that anybody is doing anything wrong, but can I ask you why nothing was recorded?

> [LOPRESTI]: Policy at the time is we don't record polygraphs.

Defense counsel objected to LoPresti's response, and the trial court immediately instructed the jury to disregard LoPresti's response. The court told the jury that "[a]ny reference to

polygraphing is out of order and is not part of this case." Defense counsel then requested a sidebar.

{¶21} At sidebar, defense counsel moved for a mistrial. The court ultimately denied the motion, but agreed to instruct the jury further. The court gave the following instruction to the jury:

> Ladies and gentlemen, I don't know if anybody knows what a polygraph is, probably not. That had nothing to do with this case. It is not in evidence, and I think it was probably a misstatement of the witness.
>
> In any event, you're to disregard it. As far as the evidence you received so far, [it] is that this witness on the stand interviewed the Defendant, and you heard what happened during that interview. * * * [T]hat's what occurred.

Accordingly, the trial court twice instructed the jury not to consider any reference to a polygraph examination.

{¶22} Much of the authority Jackson cites in his brief addresses the admission of polygraph results at trial. The results of Jackson's polygraph examination were never discussed at trial. LoPresti's statement reflected, at most, that a polygraph examination had taken place. Even so, the trial court specifically instructed the jury not to consider that testimony. *See State v. Garner*, 74 Ohio St.3d 49, 59 (1995) ("A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge."). LoPresti's statement was the only reference to Jackson having taken a polygraph examination that arose in this matter. "Considering the brief mention of the test, the timely sustained objection, the issuance of a curative instruction, and the absence of any discussion of test results or the import of denying a request to take a test, this Court cannot find that [Jackson] was materially prejudiced by the mention of a polygraph test." *State v. Minor*, 9th Dist. No. 20504, 2001 WL 1379448, *2 (Nov. 7, 2001), *overruled on other grounds*, *State v. Fischer*, 148 Ohio App.3d 126, 2002-Ohio-3026, ¶ 16 (9th Dist.). Jackson

confessed to sexually abusing his daughter and has not explained how, in light of his confession, LoPresti's single reference to polygraph examinations not being recorded prejudiced his defense. *See* App.R. 16(A)(7). Further, to the extent that Jackson now challenges the specific language the trial court used in its curative instructions to the jury, he did not take issue with the court's instructions at the time of trial. *See State v. Saravia*, 9th Dist. No. 25977, 2012-Ohio-1443, ¶ 17 ("This Court will not consider arguments made by an appellant for the first time on appeal."). Based on our review of the record, the trial court did not abuse its discretion by refusing to grant Jackson's motion for a mistrial. Jackson's fourth assignment of error is overruled.

## Assignment of Error Number Two

THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT WITHOUT CONSIDERATION OF THE OVERRIDING PURPOSES OF FELONY SENTENCING OR THE MANDATORY SENTENCING FACTORS[.]

## Assignment of Error Number Three

THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT WITHOUT ARTICULATING JUDICIALLY REVIEWABLE REASONS FOR IMPOSITION OF THE SENTENCE[.]

{¶23} In his second and third assignments of error, Jackson argues that the trial court erred by sentencing him to five years in prison. We disagree.

{¶24} Trial courts have "full discretion * * * to sentence defendants within the bounds prescribed by statute." *State v. Evans*, 9th Dist. No. 09CA0049-M, 2010-Ohio-3545, ¶ 32, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraphs one through seven of the syllabus. Appellate courts apply a two-step approach in reviewing the sentence that a trial court has imposed upon a defendant. *Evans* at ¶ 32, quoting *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and

convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4. An abuse of discretion implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶25} Jackson argues that his sentence is contrary to law because the trial court did not consider the principles and purposes of felony sentencing set forth in R.C. 2929.11 and 2929.12 before imposing his sentence. R.C. 2929.11 governs the overriding purposes of felony sentencing and defines those purposes as the need "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on [S]tate * * * resources." R.C. 2929.11(A). It instructs a sentencing court, in selecting a sentence, to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* "R.C. 2929.12(A) sets forth the general guidance factors associated with felony sentencing, including the seriousness of the conduct, the likelihood of recidivism, and 'any other factors that are relevant to achieving those purposes and principles of sentencing.'" *State v. Jones*, 9th Dist. No. 24469, 2010-Ohio-879, ¶ 39, quoting R.C. 2929.12(A). Although a sentencing judge must consider the principals and purposes of sentencing in imposing a sentence, he or she is not required to make findings or give their reasons before imposing a maximum sentence. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus. "[W]here the trial court does not put on the record its consideration of [R.C.] 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes."

(Alterations omitted.) *State v. Steidl*, 9th Dist. No. 10CA0025-M, 2011-Ohio-2320, ¶ 13, quoting *Kalish* at ¶ 18, fn. 4.

{¶26} The trial court stated in its sentencing entry that it had considered the principles and purposes of sentencing contained in R.C. 2929.11 as well as the seriousness and recidivism factors contained in R.C. 2929.12. Jackson has not pointed this Court to any authority that would have required the court to make specific findings either on the record or in its sentencing entry to reflect its consideration of R.C. 2929.11 or 2929.12. *See State v. Murray*, 9th Dist. No. 25250, 2010-Ohio-5984, ¶ 7. His sentence was within the statutory guideline range for his offense and the court was not required to make findings before imposing his sentence. *Mathis* at paragraph three of the syllabus. Jackson's argument that his sentence is contrary to law lacks merit. *See Murray* at ¶ 7.

{¶27} Next, Jackson argues that the trial court abused its discretion in sentencing him to five years in prison because it failed to articulate any reasons for its imposition of the maximum sentence. The trial court imposed a five-year sentence on Jackson after listening to both the prosecutor and defense counsel. In doing so, the court stated: "Mr. Jackson, from my point of view, this is one of the worst kinds of crimes, to take advantage of a minor kid. It is not often it is your own. So it is the judgment of this Court that I sentence you to the term of five years' time * * *." The court also wrote in its sentencing entry that it based its sentencing decision on the evidence in the record, the statements of counsel, and the factors set forth in R.C. 2929.11 and 2929.12.

{¶28} In considering all of the foregoing, the trial court determined that Jackson's sexual crime against his own daughter was egregious and warranted the imposition of the maximum sentence. The trial court was not required to elaborate further. *State v. Vu*, 9th Dist.

No. 11CA0058-M, 2012-Ohio-2002, ¶ 64, quoting *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Foster* at paragraph seven of the syllabus. Based on our review of the record, we cannot conclude that Jackson's five-year sentence amounted to an abuse of the trial court's discretion. Jackson's second and third assignments of error are overruled.

### III

{¶29} Jackson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

DICKINSON, J.
<u>CONCURS.</u>

BELFANCE, J.
<u>CONCURRING.</u>

**{¶30}** I concur based upon the record in this case. It is well-established that this Court must examine the totality of the circumstances in determining whether a confession is voluntary or coerced. Given the questionable reliability of polygraph examinations, *see generally* Michael D. Morgan, *Lying in the Heartland: Problems and Solutions Regarding Polygraph Evidence in Ohio Criminal Procedure*, 26 Ohio N.U.L. Rev. 89 (2000), and the fact that police deception and trickery have constitutional limits, the use of a polygraph examination in order to obtain a confession may not pass constitutional muster in all cases. In this case, Mr. Jackson did not dispute any of the testimony offered by the State, and, thus, I agree that the trial court did not err in denying the motion to suppress the confession.

<u>APPEARANCES:</u>

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.